(121 App. Div. 242)

## DAVIS et al. v. OAKLAND CHEMICAL CO.

(Supreme Court, Appellate Division, Second Department. July 23, 1907.)

1. EVIDENCE—MATTERS SHOWING RELEVANCY OF OTHER FACTS—BREACH OF WARRANTY.

Where plaintiffs claimed that, because of some ingredient in a bleaching liquid sold by defendant, goods were spoiled, defendant, having shown that it bleached some of the same goods with the same brand of liquid without injurious effects, should have been permitted to show that the liquid used in the test did not differ from that sold to plaintiffs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 133.]

2. SAME—SIMILARITY OF CONDITIONS.

Where plaintiffs claimed that because of some ingredient in a bleaching liquid sold by defendant goods were spoiled, testimony of a practical bleacher that he had used the same brand of liquid to bleach the same kind of goods with good results was admissible, in connection with proof

that the liquid used by witness was of the same chemical composition as that sold plaintiffs.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 401.]

Gaynor, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Thomas J. Davis and Henry L. Quick against the Oakland Chemical Company. From a judgment for plaintiffs, and from an order denying its motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

Walter R. Beach, for appellant.
Louis H. Porter, for respondents.

HOOKER, J. The plaintiffs have had a judgment for damages because of the defendant's breach of an implied warranty on the sale by it of three barrels of a bleaching liquid sold under the trade-name of Perozone. A large quantity of fine silk and cotton texture, known as "mull," was treated by the plaintiffs with the Perozone and ruined. At the trial the plaintiffs claimed the fault lay in the liquid. The defendant contended it lay in the manner of its use. After the damage, the plaintiffs delivered to the defendant samples of unbleached mull, such as had been injured, and the defendant's president testified that in its laboratory the samples were bleached with no difficulty whatever by following the directions that had been given to the plaintiffs. He continued:

"We used Perozone for the bleach. It came from the same source that Davis & Quick's [the plaintiff's] goods came from, our regular factory stuff.

"By the Court: Q. Not out of the same batch that they did? A. No, sir; that is, not likely to be—may have been."

The defendant's counsel then asked the witness the following questions, which were objected to (although the ground of the objection does not appear), the objections were sustained, and the defendant excepted, namely:

"Q. What can you say about the uniformity of various batches?

"Q. Had you any reason to suspect or believe that there was any difference in the preparation of the batches?

"Q. Do you know of any reason why the three barrels of Perozone sold them differed from the others in your warehouse?"

While the last two of the questions are doubtless open to criticism as to form, the three questions addressed themselves to a phase of the controversy which was material to the issue. The plaintiffs claimed that because of some ingredient of the Perozone the goods were spoiled. To meet that claim the defendant showed that it bleached some of the same goods with Perozone without injurious effects, and should have been allowed, if it could, to meet the evidence adduced by the question of the court to show that the reagent used in the test by the defendant did not differ from that sold to the plaintiffs. The exclusion of the evidence was, therefore, error.

The witness Dr. Frederick E. Lichte was in the dyestuff and chemic-

al business and was a practical bleacher. While he was in the act of testifying that he had by the use of Perozone bleached mull similar to that destroyed with good results, the court interrupted the examination with this statement:

"It is admitted that the material has ordinarily done its work properly. I will not let you accumulate evidence on that point. I am going to confine the plaintiffs to the proof that this particular lot was bad. You certainly can see that it is idle to multiply evidence on that branch of the case, when your adversary has conceded it, and I have told you that I will so charge the jury."

To this ruling the defendant excepted. This was error. We search the record in vain for any stipulation or concession by the plaintiffs that Perozone would bleach cotton and silk mull. The concession seemed to go no farther than this language of the plaintiffs' attorney:

"We concede that it can, under some circumstances, bleach a certain class of goods."

To rebut the plaintiffs' contention that the Perozone was at fault, it was, of course, material for the defendant to show, if it could, that fabric of the same character had been successfully treated by the witness with Perozone; it then being probably important for the defendant to show that the Perozone used by the witness was of the same chemical composition with that sold to the plaintiffs.

There were other errors alleged to have been committed by the learned trial court during the progress of the trial; but, inasmuch as similar situations may not arise upon the new trial, it is unnecessary to discuss them here.

For the errors pointed out, the judgment and order must be reversed, and a new trial granted; costs to abide the event.

HIRSCHBERG, P. J., and RICH and MILLER, JJ., concur.

GAYNOR, J. (dissenting). The questions were indefinite and asked for conclusions. A trial judge may, and should exclude such questions, if asked on the direct examination. Only questions calling for precise facts are admissible, and then the judge and jury draw conclusions. And no one will deny that on cross-examination a trial judge has wider latitude in respect of the examination of witnesses than on direct examination; he may curtail it, and keep it within bounds.

As to the declaration of the trial judge that it was admitted by the plaintiff's side that Perozone worked all right and was efficient, was a good article, and that the only question he was going to try and submit to the jury was whether the particular lot sold to the plaintiff was bad, by reason of some neglect in making it, that alone constitutes a stipulation by the plaintiff, it being then there acquiesced in. But more than that, a trial judge's word imports verity, and a stipulation may rest in his word alone. It is not necessary that the record show in addition a formal stipulation of counsel. More still, when the record is examined, it is found that the case was tried on the theory stated by the trial judge; and that the charge sent it to the jury on that question only.

This was a long and tedious trial, and no substantial error seems to exist for us to set it at naught, and have the work all done over again.