SHOWEN v. J. L. OWENS CO.

1. EVIDENCE — HEARSAY — SALES — MACHINERY—BREACH OF WARRANTY—CONTRACTS.

In an action for breach of warranty of a number of threshing machines furnished by the manufacturer to its sales agent, it was not erroneous to receive in evidence the testimony of employees and officers of the agent who had examined several of the machines returned as defective at the shops of the sales agent, and who testified that the condition of the machines indicated defects and breakages as claimed and shown by certain of the purchasers that had used the threshing machines; the testimony tending to show similar conditions in other machines manufactured by defendant and returned as defective to the vendee.

2. SAME—PRESUMPTIONS—CAUSE.

Proof that machines manufactured by the defendant and returned to the sales agent on the ground that they were defective, had similar breakages and defects as machines which the purchasers testified, from use and observation, were so defective, raised a rebuttable inference or pre-

sumption that the common results were produced by a common cause.

3. APPEAL AND ERROR—RECORD—EXHIBITS—INDEX.

Failure to properly index a number of exhibits relied upon by defendant in its assignments of error as erroneously admitted in evidence, the index not stating in brief form the substance of each exhibit, as required by Supreme Court Rule 36, justifies the court in declining to pass on the questions raised by the assignments in a lengthy case involving 126 assignments of error and in which the exhibits were not printed in the record, but produced as part of the bill of exceptions at the argument.

4. EVIDENCE—CUSTOMS—BOOKS—TRADE USAGE.

Evidence offered by the defendant from the books of the agency for the purpose of showing that it was customary in that business to take back machinery and charge it to a certain account, was rightly excluded as immaterial.

5. SAME—LOSS—DEFECTIVE CONDITION.

The testimony relating to the condition of machines returned to the selling agency was competent to show plaintiff's damages and was correctly received in evidence.

6. SAME—EXPENSE OF REPAIRS.

Evidence based on the books of the defendant showing an itemized statement of expenditures for repairing breakages and rebuilding defective machines, corroborated by testimony of officers, employees, and shop men, showing items of expense for repairs and rebuilding of machines was also sufficiently definite and relevant to sustain plaintiff's claim.

7. APPEAL AND ERROR—EXCESSIVE VERDICT—NEW TRIAL.

The proper practice to review an excessive or insufficient verdict is to move to set aside the verdict; the amount of damages will not be considered on appeal unless the point is presented on a motion for a new trial.

Error to Kent; Perkins, J.   Submitted April 23, 1913.   (Docket No. 35.)   Decided October 2, 1914.

Assumpsit by John L. Showen as assignee of the Arbuckle-Ryan Company against J. L. Owens Company for breach of warranty.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Eastman & Eastman,* for appellant.

*Clapperton, Owen & Hatten,* for appellee.

McALVAY, C. J.   Plaintiff recovered a judgment in an action brought by him in assumpsit, commenced by attachment against defendant to recover damages arising from a breach of guaranty contained in written contracts between his assignor and defendant for the purchase of certain bean threshing machines. Defendant has removed the case to this court for review upon a writ of error.

Certain jurisdictional questions in the case which were raised upon certiorari to this court from an order of the circuit court overruling a plea in abatement and denying a petition to dissolve the attachment were passed upon by this court in *Showen* v. *J. L. Owens Co.,* 158 Mich. 321 (122 N. W. 640, 133 Am. St. Rep. 376).   In that opinion, to which reference is had, the several counts in the declaration are set up at length, wherein plaintiff's cause of action is clearly stated.

The material facts in the case are that plaintiff's assignor, the Arbuckle-Ryan Company, an Ohio corporation, and defendant, a Minnesota corporation, entered into two certain contracts, by the terms of which plaintiff's assignor agreed to purchase from defendant a certain number of bean and pea threshing machines.   These contracts were quite similar in terms, and in each defendant guaranteed the machines sold to be free from inherent and mechanical defects.   These contracts were in the nature of written orders by plaintiff's assignor for a certain number of these machines at certain prices on certain terms, which orders were agreed to by defendant company in writing.   The first was dated May 13, 1904; the second, December 26, 1904.

The following is a copy of the second contract:

"TOLEDO, OHIO, Dec. 26, 1904.
"J. L. OWENS COMPANY,
          "Minneapolis, Minn.
"*Gentlemen:*

"You will please enter our order for thirty Owens bean and pea threshing machines, sizes to be 36x54 inches and smaller. Each machine to be complete with belts, Owen stacker, arranged for straight and side delivery, including tally box.

"The above machine to be sold at a price of 40 per cent. discount from list price of 1904, except re-cleaner with elevator and bagger, which is to be listed at $150 instead of $200, and net price of re-cleaners to be $100 to us.

"All machines to be delivered f. o. b. Minneapolis. The J. L. Owens Company to guarantee the machines to be free from inherent and mechanical defects.

"The Arbuckle-Ryan Co. agree to pay for these machines January 1, 1906, giving the J. L. Owens Company acceptances as machines are shipped with the privilege of the one renewal of such acceptance, or a portion, if desired, interest on such renewals.

"In consideration of the above order, the J. L. Owens Co. agree to give the Arbuckle-Ryan Co. the exclusive sale of the Owens bean and pea threshing machines in the entire State of Michigan. The Owens Co. to furnish necessary printed matter, blank orders, etc.

"Settlement for the above machines to be made August 1st, and if any subsequent orders, settlement to be made on shipment of machinery.

"Any inquiries received by the J. L. Owens Co. from the best territory to be sent us immediately.

"The J. L. Owens Co. agree to keep a stock of repairs when ordered to be consigned to us, and to be subject to a discount of 50 per cent. from the list price.

                    "Respectfully yours,
                         "THE ARBUCKLE-RYAN CO.,
                         "E. J. WEHRLY, Gen. Mgr.
"We hereby agree to the above order.
                         "J. L. OWENS CO.,
                         "By J. J. OWENS, Pres."

The Arbuckle-Ryan Company, plaintiff's assignor,

during 1904, under the first contract, which as to the matters in dispute in this case is similar to the second contract, bought from defendant and sold its customers 34 machines. Under the second contract plaintiff's assignor bought 30 machines, of which 20 were sold. Defendant company and its predecessor for several years prior to 1903 had been manufacturing a few bean threshers, and in that year manufactured five machines of a new type, two of which were sent into Michigan. These were experimental machines. In January, 1904, it proceeded to manufacture a shop order of 100 machines, in which the main shaft of the rocker arm system, so called, was changed from the straight eccentric shaft of 1903 to a crank shaft made of cast iron. The machines purchased by plaintiff's assignor in 1904 were out of this shop order. The rocker arm system operating in connection with the crank shaft in this machine was new in a bean threshing machine. These machines were materially wider and longer than the standard makes on the market and were, in several respects as to the construction of the frame and the operation of the separating apparatus, distinctly different from other bean threshing machines. Several pages of appellant's brief are taken up with a detailed description of these machines. As the controversy in this case, under the guaranty of defendant that the machines would be "free from inherent and mechanical defects," is confined to a few features of these machines, it will not be necessary to describe them or to refer to their general construction.

These machines, which were purchased by plaintiff's assignor in the years 1904 and 1905 under these contracts with defendant company, were at once resold to various customers. It is the claim of plaintiff that the first machines delivered under the first contract were inherently and mechanically defective;

that they were improperly constructed and imperfect in materials used and in workmanship; that complaints were made to them by the purchasers on account of breaking of shafts, shaft boxes, and certain other parts. Considerable correspondence was had between the defendant and plaintiff's assignor in relation to these complaints by which defendant was informed of the situation. Defendant's letters show such knowledge, and expressions of regret, together with a promise to send an expert to help rectify the difficulties and fix matters so that there would be no further trouble. The principal complaints made by purchasers which developed in the use of the machines in 1904 were as to the general breaking of crank shafts and shaft boxes, also as to the weakness of the frames of the machines and the poor quality of material from which they were built. There were also complaints that the elevators would not work properly, and that the machines were not strong enough to do the work of threshing beans. These troubles were general and applied to all of the machines sold under both contracts. Plaintiff's assignor was obliged to take back 27 machines sold in 1904 and one-half of those sold in 1905. Twenty-four of those sold in 1904 were shipped to Toledo and almost entirely rebuilt or scrapped by the Arbuckle-Ryan Company.

After this correspondence between the parties, at the close of the season of 1904 and before entering into the second contract, the president of defendant company went to Toledo for the purpose, among other things, of inducing plaintiff's assignor to continue the purchase and sale of machines in 1905. It is claimed by plaintiff that this representative of the company, in furtherance of that purpose, agreed on its behalf to send necessary materials and a competent mechanic to repair and make good every machine already sold.

He also represented that the new machine for 1905 would be built to avoid the weaknesses discovered, and would be a first-class machine; that a different shaft and heavier boxes would be used; also that defendant company would make good every machine sold to plaintiff's assignor in 1904; and that, relying upon such agreements and promises, plaintiff's assignor entered into the second contract. From this representative's testimony it appears that he reported what he had learned of the machines in Michigan in 1904, and it also appears that a representative expert of defendant had been sent into Michigan for the purpose of fixing these matters up, and that defendant had sent repairs and new crank shafts to replace the broken ones in the machines which had been sold to plaintiff's assignor.

Plaintiff claims that the agreement to make good the warranty on these machines in the manner above stated was not carried out. Plaintiff also claims that the machines so purchased by his assignor were paid for, and that by reason of the aforesaid defects in the machines his assignor was obliged to and did expend a large amount of money in rebuilding and repairing such machines as could be repaired, and that he suffered entire loss on other machines, together with loss of profits on sales of machines they were obliged to take back, rebuild, and resell. It is claimed by defendant that there were no inherent or mechanical defects in these machines sold under these contracts; that they were well built of the best material in a good and substantial manner; that the difficulties which arose were caused, not by the defects in the machines, but through the carelessness in operating them by those who purchased the same. Defendant further claims that a settlement was had between the parties at the time of entering into the contract of December 26, 1904, where an allowance was made

to plaintiff's assignor for extras furnished up to that date and an agreement was entered into to furnish additional extras for other machines, which it claims was done and the settlement fully executed, and the claim was made that there was a large balance due it on account of the purchase of such machines unpaid. These claims of defendant are denied by plaintiff.

The record in the case is voluminous, from which it appears that both parties offered testimony tending to support their respective claims in this suit; that the case was submitted to a jury and a substantial verdict returned in favor of plaintiff.

Of the numerous errors assigned by appellant none have been presented and discussed except such as relate to the admission and rejection of evidence and the refusal of the court to give certain requests. These have been as far as possible classified, and are presented and discussed in its brief in 23 groups. The plaintiff and appellee in his brief has considered the errors relied upon by defendant in the same order in which they are presented in appellant's brief.

Before proceeding to consider the errors assigned and relied upon by defendant, it will be helpful in giving a clear understanding of the case to state briefly the theories of the parties upon which they presented it to the court.

The contention of plaintiff was that all these machines purchased by his assignor from defendant were inherently and mechanically defective; that they were purchased and paid for upon the representations and guaranty of defendant with respect to their quality and construction; that the machines so purchased were sold to its customers relying upon such representations that they would be good for the purpose for which they were bought and sold; that from the time the first machine was used for threshing

beans there were continual breakages and difficulties caused by inherent and mechanical defects in them; that every effort was made to repair breakages and other troubles, and great loss and expense accrued; that defendant was notified of the nature of the breakages and the complaints of the purchasers of the machines; and that it participated in the attempts to repair machines and promised to make every machine good, which promise was not fulfilled, all to plaintiff's great damage. Defendant's contention was that these machines were in all respects as guaranteed, and not inherently and mechanically defective; that the breaking of the different parts and the trouble arising in operating the machines were not caused by the weaknesses and imperfections of such machines, but by the carelessness and incompetency of the operators; that plaintiff had failed to show any "inherent or mechanical" defects; that the case had been settled; and that no damages had been shown.

The three most important questions raised upon the errors assigned and relied upon by appellant are:

*First,* those relating to the competency and sufficiency of testimony admitted by the court in the case, over the objections and exceptions of defendant, upon the question of the inherent and mechanical defects in these machines; *second,* those relating to the competency and sufficiency of the evidence, admitted under the same circumstances, as to the question of loss and damage to plaintiff; *third,* those relating to the refusal of the court to give certain requests presented by defendant.

1. Before discussing these questions it' will be proper to state that the machines purchased under the first contract were of the same model, and alike in construction and design. They were machines out of the first shop order of 100 machines defendant ever manufactured of this style of bean threshing ma-

chines. Theretofore it had manufactured only a few experimental machines. In making proof of the claimed inherent and mechanical defects in these machines plaintiff introduced in evidence the testimony of seven individual customers, purchasers of these machines, who each testified fully and at length from his personal knowledge in regard to the actual operation of his machine, as to the weaknesses and defects, both in material and construction, which became apparent as soon as the machine was operated, as to the parts which broke in undertaking to thresh beans, and as to the failure of the machine to perform the work for which it was intended. An examination of the testimony of these individuals shows that the defects were substantially the same in each machine of this class. The most vital and fatal defect which all this testimony of the owners and operators tended to show was the failure of the rocker arm system, which was operated by a main crank shaft connected by four pitmans to the bolter and grain pan, oscillating them in opposite directions for the purpose of separating beans from pods, straw, and dirt. These crank shafts were made of cast iron, and it appears that all of them broke under the strain of the work, as did also the boxes which held the ends of these shafts. This testimony also tended to show structural weakness and poor material in the framework and other parts of these machines.

The machines purchased under the second contract were identical with those under the first, except steel shafts, which were substituted for the cast iron ones, running in different shaft boxes. However, these were exposed to sand and dirt which cut and wore them out rapidly and unevenly, causing the machine to pound and break, by reason of being out of balance.

Plaintiff's bill of particulars claimed damages on

182 Mich.—18.

the ground of defective construction, poor material, and inherent and mechanical defects in 37 machines. Testimony was also offered by plaintiff and admitted of several of the officers and employees of plaintiff's assignor for the purpose of showing the condition of the other machines as to inherent and mechanical defects when the machines were returned to them and were in their shops at Toledo, Ohio. The owners and purchasers of these machines who had refused to keep them and had returned them to plaintiff's assignor were not produced as witnesses. Some of the witnesses had seen some of these machines in operation in the field, but much of this testimony relative to these other machines was given by those who had only seen and examined the machines after their return to the shops, where they were examined and later repaired and rebuilt by plaintiff's assignor. This testimony of all these witnesses agrees as to the condition of the machines and tends to show such condition as to breakages and defects to be the same as in the seven machines concerning which the purchasers testified.

The objection of defendant to the testimony of these witnesses who had not seen these machines in operation to see by what means the broken condition was caused was that it was hearsay and incompetent. It was admitted by defendant that the testimony of the seven original purchasers "was competent and sufficient to warrant the jury in rendering a verdict for damages as far as their respective machines were concerned." It is not denied but that all these machines were identical in construction, with the exception of the shafts and boxes in the machines bought under the second contract. The testimony of the seven owners tended to show the existence of common, inherent, and mechanical defects in the class of machines in question which produced common results. The testimony of the other witnesses, tending to show

like conditions, which was objected to, was in our opinion competent. All of the testimony upon this subject related to a class of machines of the same type and construction. After being used, all of the machines rejected and returned by the purchasers to plaintiff's assignor showed the same conditions as to breakages and defects. It follows that this testimony objected to raised a presumption or inference that such common results were produced by a common cause. Such presumption or inference, however, would be rebuttable. 1 Wigmore on Evidence, §§ 437, 438, and notes. The court was not in error in admitting such testimony.

Two other matters, one relative to the admission of evidence offered on the part of plaintiff, and the other relative to the exclusion of evidence offered by defendant, should also be considered under this subdivision. Thirty-nine assignments of error are included in the objections of defendant to the admission of that number of letters offered and received in evidence. These letters are not printed in the record. They are part of a voluminous correspondence between these parties during their business relations under these contracts relative to the bean threshing machines, and extend over a long period of time, which were introduced by both parties. By a stipulation between the parties defendant was relieved from printing these letters, and they were stipulated to be made a part of the bill of exceptions to be produced on the hearing, etc. From these assignments of error there is no indication where the exceptions upon which they are based may be found in the record. There is a reference in each assignment of error covered by this paragraph of defendant's brief to the number of the exhibit referred to. Reference to the index of exhibits according to such numbers gives merely the pages where the exhibit is supposed to

appear, and a statement that it is a letter from plaintiff to defendant, or vice versa, not giving "in brief form the substance of such exhibit" as provided by Rule No. 36. When the statement is made that the record contains 540 pages, with a large portion of the 126 assignments of error relied upon, and that there are 154 exhibits, 40 of which are included in this group, it will indicate in some measure the amount of work required of the court in order to intelligently understand what these exhibits contain and to pass upon the objections made to their introduction. We, therefore, refuse to consider these assignments of error on account of noncompliance with the requirements of the rules of this court.

During the trial, on cross-examination of Mr. Ryan, one of plaintiff's witnesses, defendant offered the books of plaintiff's assignor, which were then in court, in evidence for the purpose of showing that "It is a customary thing in its business to take back machinery and charge it back to bills receivable." From defendant's brief it appears that it "contended that it is customary among jobbers and manufacturers of agricultural implements to repair and rebuild a large number of machines sold." The court properly excluded the evidence as immaterial to the issue.

2. Errors are assigned by defendant upon the admission of testimony in relation to the loss and damage to plaintiff because of its incompetency and insufficiency.

Our conclusion as to the admission of the testimony relative to the condition of the machines which had been returned to plaintiff's assignor for which plaintiff claimed damages by reason of the failure of defendant's guaranty bears directly upon the question of the amount of such damages, and is against the contention of defendant. It agrees with the conclusion of the learned trial judge, who, in submitting the case

to the jury, properly instructed them upon the matter of the consideration of such testimony in arriving at the amount of plaintiff's damages. It follows that as to that portion of his damages plaintiff would be entitled to recover such as he could establish by competent proof.

Defendant has also assigned errors upon the admission of certain testimony, other than that above referred to, on the part of plaintiff, which was offered to show the loss and damage suffered in repairing and rebuilding the machines which were refused and returned, and other items caused by defendant's breach of guaranty, on the ground that it was uncertain, indefinite, and incompetent. The record shows that soon after plaintiff's assignor purchased these machines under the first contract and began to sell them, complaints as to breakage, etc., already referred to, began to come in and payment for machines was refused and purchasers began to reject and return them; that plaintiff's assignor undertook to repair such machines without success. The record also shows from testimony and the voluminous correspondence between the parties defendant's early knowledge of the breakages in and return of machines, and it also attempted to remedy the difficulties by furnishing supplies to replace broken parts and sending an expert for the purpose of putting the machines in good working condition, but without success. This condition relative to the breaking and return of machines continued during a long period of time. It appears, also, that plaintiff's assignor did not know that the machines were of an experimental character and not as represented; that it had paid for all, or nearly all of them, under the contract, and had sold them relying upon the guaranty, and was under obligation to the purchasers to repair or make good the machines sold, and was not in a position to rescind the

contracts and return the goods. The territory in
which these sales were made extended over the entire
State of Michigan. Many of the machines returned
were repaired and rebuilt and disposed of for what
they would bring. Others were scrapped because they
were useless. An itemized account of all of the cost
and expense in taking up, repairing, and rebuilding
all of these machines was not kept. The testimony is
voluminous as to the manner in which the machines
were handled after they were returned to the shops at
Toledo and the attempts made to repair and recon-
struct them and the disposition of all of them.
Twenty-three machines were rebuilt. Others were
disposed of in various ways, and, as already stated,
several were scrapped. The witnesses on the part of
plaintiff who testified relative to the amount of dam-
ages he had suffered were officers and employees of
plaintiff's assignor, including the superintendent of
the shops, the men who assisted in taking up the ma-
chines, and those in charge and control of the books
of the corporation. This testimony was given from
actual knowledge of the witnesses as to what had been
done and expended, and also from the books which
were produced. The objection is made that the testi-
mony relative to these damages was too uncertain and
indefinite, and should not have been admitted in the
case. It is apparent from the record, and was so
stated by the court while this question was being con-
sidered, that the situation was complicated, yet there
was evidence presented and admitted which tended to
show from the books kept at the time that an accurate
itemized account was kept by plaintiff's assignor,
showing the exact amount expended in repairing and
rebuilding three of these machines and further testi-
mony given by witnesses who claimed to have personal
knowledge of the rebuilding of these machines that
the expense to rebuild each machine was practically

the same. There was also evidence both from the books and from oral testimony introduced tending to show other items which had been expended by plaintiff's assignor on account of the claimed inherent and mechanical defects in these machines. From an examination of the record it appears that the court excluded testimony that appeared to be speculative or uncertain, and the testimony admitted was confined to amounts which were shown to be actual and substantially accurate. The testimony which was admitted upon the question of damages was not speculative, uncertain, or indefinite, but was both competent and material.

3. Assignments of error Nos. 117, 118, 119, and 120 are based upon the refusal of the court to give certain requests to charge presented by defendant. With one exception these are the only errors of the great number assigned to the charge of the court and the refusal to give requests to charge, which are not waived by the defendant. These four assignments of error were combined and argued together with assignments based upon exceptions to the admission of the testimony of witness Ryan, touching the condition of the machines when they arrived at Toledo and the manner of rebuilding and repairing them and the general method adopted by plaintiff in arriving at his measure of damages as to the entire 37 machines. We have already discussed the testimony of this witness and other testimony of like character, and determined that the court was not in error in admitting such testimony. While such determination to a large extent disposes of the errors assigned as to the refusal to give these requests to charge, yet it is necessary for the court to state that they included other propositions. The record shows that the portions of such requests which were proper and material were given, substantially as requested, in the main charge of the court.

There are many other assignments of error relating, for the most part, to the admission of testimony which are relied upon by defendant in its brief. These have been carefully examined. One of them shows upon the face of the record that it was without doubt a typographic or stenographic error. Others are without merit and of no importance in the consideration of the case. None of them in our opinion was prejudicial to defendant.

Defendant in its brief argues that the verdict was excessive. No motion to set aside the verdict was made in the case, which is the proper practice to raise that question in this court. The case is an important one, and, from a statement which appears in the record, it occupied the attention of the court and jury for about six weeks. A large amount of testimony was admitted and submitted to the jury. The facts were more than usually complicated. The record shows that the case was tried skillfully, and that the questions of fact involved were submitted to the jury in a charge which carefully instructed them as to the law in the case. In this court we find that counsel for defendant have only questioned this charge in two particulars. The jury has passed upon the facts and rendered a verdict in favor of the plaintiff, which in our opinion was supported by the evidence which was submitted to them. Upon the questions of law presented to this court we have agreed with the learned trial judge. We find no prejudicial error in the case.

The judgment of the circuit court is affirmed, with costs to plaintiff.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.