[No. 21833.   Department One.   July 1, 1929.]

JOHN G. JOHNSON *et al., Respondents,* v. BEN OLSON
COMPANY, *Appellant.*[1]

*Fitch & Arntson* and *B. F. Jacobs,* for appellant.

*A. G. Laffin,* for respondents.

TOLMAN J.—Respondents, having developed and begun the manufacture in a small way of an ammonia ice machine, designed for use in ice cream parlors, drug stores, and other like retail establishments, and having sold and placed in operation some six or seven, only, of these machines in places of business in the city of Tacoma, in May, 1925, entered into a written contract with the appellant which forms the basis of this action.

By the terms of the contract, appellant was granted the exclusive right to sell the ice machine in Pierce county, Washington, for a period of five years. Respondents undertook to manufacture promptly, as or-

[1]Reported in 278 Pac. 699.

dered, and deliver the machines for a specified price, and appellant covenanted:

"(1) To at once institute and thereafter during the life of this or other contracts or renewals of contract, prosecute a vigorous sales campaign for sale of said machines in Pierce county, Washington, and such additional territory as the parties hereto contract in regard to.

"(2) To purchase from the second parties for delivery in Pierce county during the first twelve months of this contract, at least twenty-four (24) of said machines, and thereafter during the remaining life of this contract, more than that number of machines during each twelve months.

"(3) First party agrees to pay all invoices for machines within thirty days after delivery of the same by the second parties.

"(4) First party agrees that, during the life of this contract or contracts for additional territory or renewal contracts, it will not be interested, directly or indirectly, in the sale of any other machine or machines than those manufactured by second parties that may be in any manner competitive with the second parties' machines.

"(5) First party further agrees that, if it fails to faithfully keep and perform any of the above covenants on its part to be kept and performed, then second party has a right to at once cancel and terminate this contract and any and all then existing contracts or renewal contracts without being in any way obligated to the first party to reimburse it for any costs or expenses it may have or claim to have paid or incurred by reason of this contract or such other or renewal contracts."

While the written contract is silent upon that subject, both parties seem to agree that appellant also undertook the duty of servicing all of the six or seven machines which respondents had theretofore sold, and it did in fact service those machines with the full knowledge and consent of respondents. The only complaint, if any, on that subject is as to whether appellant

properly and skillfully serviced those machines.

After the execution of the contract, appellant sold two machines only. It claimed that these machines did not, and could not be made to do the work for which they were intended, and finally it ceased all efforts to make further sales. The reasons for so ceasing are very much in dispute, but it is unnecessary now to go into those issues.

. Respondents thereupon brought this action to recover damages for the alleged breach of the contract to take and pay for at least twenty-four machines in each year, serving and filing a complaint setting out the contract, and alleging breaches. Appellant answered the complaint, admitting the contract, denying any breach and, by way of affirmative defense, alleging representations or warranty to the effect that the ice machine would properly do the work for which it was intended, and specified ten particulars in which the machine entirely failed, thus making it impossible for appellant to perform. There was also an affirmative defense of a release or a mutual agreement not to proceed further under the contract. Upon these issues, the cause was tried to a jury, which rendered a verdict against the appellant in the sum of thirty-two hundred dollars, and from a judgment on the verdict, this appeal is taken.

Appellant's assignments of error go only to the denial of its motion for judgment, n. o. v., the denial of its motion for a new trial, and the rulings of the trial court excluding evidence offered to show that the six or seven machines manufactured and sold by respondents shortly prior to the making of the contract which it claims were of identical construction, design and size, were defective in design and workmanship, did not and could not be made to do the work for which they were intended and sold, and that the use of every

such machine had been abandoned because of such defects.

After a reading of the testimony, we are satisfied that there were questions of fact for the jury and as that assignment is not stressed, we will not enter into a detailed discussion of the facts.

Whether the motion for a new trial should have been granted depends upon whether or no the court erred in excluding testimony, and we therefore proceed to the vital question in the case.

■ The trial court consistently ruled against the reception of any evidence as to performance by the machines sold prior to the contract, though there was abundant evidence already received from which the jury might have found that those machines were identical in every respect with the ones furnished to the appellant under the contract; or, if there was any difference, it was such a minor one as would not affect their immediate performance. True, two witnesses who had written letters of recommendation furnished by respondents to appellant to aid in its sales campaign were permitted to testify as to the performance of their particular machines prior to the time such letters were written, but not otherwise. Comprehensive offers of proof followed the court's rulings and the question thus raised was carefully preserved in the record.

We are not now confronted by the ordinary situation of an ultimate consumer, who has purchased for his own use, attempting to show that like articles produced by the same seller and sold to others have proven defective. Such a consumer is not concerned with the seller's whole output, but only with the article furnished to him; so the question of the performance of other like machines, or articles, is more or less remote

as to him. Yet such evidence for or against him is generally held to be admissible.

Here, however, the purchaser was a general sales agent for a specified territory, and its prospect of making future sales was affected not only by the machines which it sold, but likewise by respondents' prior sales in the same territory. Therefore, the evidence sought to be introduced to the effect that the prior-sold machines were defective in design and inefficient in performance not only tended to show that machines of the same design sold under the contract were likewise defective and would not perform, but also tended to show that respondents had, by their own acts, destroyed or impaired the market to which appellant was limited and had therefore themselves breached the contract.

If appellant was bound to service those prior-sold machines, that might be still another reason for the admission of evidence as to their performance. Both parties seemed to proceed upon the theory that it was so bound; but since the contract imposes no such duty, we omit this consideration.

The greatest danger in the reception of this class of evidence is that of opening up so many collateral issues as to lead to confusion. The trial court well said:

"If we received testimony of people who had bought the machine and were not satisfied with the operation, you would have to inquire into the method and care of the machine, and the skill of the person using it, and a hundred different things which might enter into the successful operation of the machine, independent of any defects in the machine."

All of which is very true and, therefore, the admission of this class of evidence is often left to the sound discretion of the trial court. If, here, hundreds or thousands of such machines had been sold throughout a wide territory, we should perhaps feel constrained to uphold the ruling; but it plainly appears that only six

or seven machines had been sold before the execution of the contract, all in the city where the trial of this cause took place, and presumably the facts with respect to them were available to both parties. While evidence of the history of the performance of all of these machines would have taken time and might perhaps have drawn attention somewhat from the main issue, yet we think, on the whole, an intelligent jury, under proper instructions, might have received valuable assistance from it.

From what we have said, it may be understood that we consider the evidence in question to be logically admissible in this case.

"Logic is the controlling force in the modern law of evidence. An offer by a party to prove a fact in evidence involves an assertion by him that such a relation exists, in reason, as a matter of logic, between the fact offered and a fact in issue that the existence of the former renders probable or improbable the existence of the latter, and the relation thus asserted is termed relevancy. It is therefore a basic rule of evidence that whatever facts are logically relevant are legally admissible, while facts which are not logically relevant to the issue are not admissible; . . ." 22 C. J. 158, § 89.

In a new work, based upon the decisions of the Pacific Coast and Western states, the rule is given as follows:

"Results from like machine. On an issue as to whether a machine purchased failed to properly perform because of defect in construction or because of mismanagement, evidence that some other machine furnished by the same manufacturer similarly failed is not admissible. But where a machine is bought for a specific purpose, and the question tried is whether the machine purchased did or did not do the work for which it was designed and purchased, and defendant contends that the machine is worthless, and plaintiff states that it was not properly managed, evidence tend-

ing to show that a like machine, when operated by competent persons, failed to do good work in the matter complained of, is competent. In an action for damages resulting from manufacturer's negligent construction of an oil tank, comparative evidence sustaining and refuting the charge of negligence should be confined to the behavior of tanks of the same class produced by the same manufacturer.'' Nichols Applied Evidence, Vol. 3, p. 2951, § 3.

We seem to have approved the rule without comment in *Los Angeles Olive Growers Association v. Pacific Grocery Co.*, 119 Wash. 293, 205 Pac. 375. A great majority of the cases from other jurisdictions seem to support the views we have expressed. Among the many which we have examined, we cite only a few. *Ames v. Quimby*, 106 U. S. 342; *Dempster Mill Mfg. Co. v. Fitzwater*, 6 Kan. App. 24, 49 Pac. 624; *Davis v. Oakland Chemical Co.*, 121 App. Div. 242, 105 N. Y. Supp. 693; *City of Findlay v. Pertz*, 74 Fed. 681; *Baber v. Rickart*, 52 Ind. 594; *Ward v. Blake Mfg. Co.*, 56 Fed. 437; *Brierly v. Mills*, 128 Mass. 291; *Showen v. Owens Co.*, 182 Mich. 264, 148 N. W. 666; and *Waterman-Waterbury Co. v. School District No. 2*, 182 Mich. 498, 148 N. W. 673.

Because of the error in rejecting evidence, as indicated, the judgment is reversed, with directions to grant a new trial.

FULLERTON, HOLCOMB, MAIN, and BEALS, JJ., concur.