[No. 23054. *En Banc.* November 9, 1931.]

W. F. BURNETT *et al., Respondents,* v. EDW. J.
DUNNIGAN, INCORPORATED, *Appellant.*[1]

[1] Reported in 4 P. (2d) 829.

*Stratton & Kane,* for appellant.

*Padden & Moriarty* and *Earl F. Requa,* for respondent.

HOLCOMB, J.—In November, 1929, appellant was engaged in state highway construction in Kittitas county. The work was being done under one McGuire, as general superintendent of appellant, he having entire supervision and control of the work under the contract between appellant and the state. A heavy blast under the direction of this superintendent dislodged a greater quantity of rock than was anticipated; and it soon became apparent that the highway, the only road over the Cascade mountains from Seattle to Ellensburg and Yakima, would be closed to traffic for eight or nine hours, contrary to the contract of appellant.

On the side of the highway west of the point of the blockade, many automobiles were awaiting the opening of the highway. Among those cars was one in which there were an elderly lady and other persons travelling to Yakima to attend a funeral. To enable these persons to attend the funeral, appellant's superintendent had them walk over the blocked space, and then put them in a truck and took them to another portion of the work, agreeing with them that he would get a car and take them to Easton, which was east of the blocked space, where they could catch a train and go on to Yakima. The automobile of respondent husband, one of appellant's employees, was parked at a point east of, or towards Easton, from the blocked space on the highway. Burnett granted permission

to appellant's superintendent to use the automobile to transport the persons to Easton.

Missing the train at Easton, the superintendent proceeded with Burnett's car, without any further consent from him and without his knowledge, to Ellensburg, where the party again missed the train. The superintendent then proceeded with the automobile, delivering the party at their destination in Yakima. The superintendent then started back with the automobile for the road camp where he had taken charge of it. Through the negligence of this superintendent, the automobile was completely wrecked on the return trip.

The car was placed in a garage at Cle Elum, where it remained approximately one week. It was then, pursuant to orders from the general superintendent of appellant, shipped to Seattle to the Pontiac agency, where it was repaired. It was then placed in storage by the Pontiac agency in a public garage some time in February or March, 1930. Appellant refused to pay for the repairs, amounting to three hundred and sixty-three dollars and seventy-five cents, whereupon, in June, 1930, the Pontiac agency enforced payment of its claim by garnisheeing the bank account of appellant.

The automobile was purchased by Burnett from a dealer in Ellensburg, June 4, 1929, under a conditional sale contract, which contract was by the vendor assigned to the General Motors Acceptance Corporation. Of the purchase price of $1,155, Burnett paid five hundred dollars at the time of purchase, and obligated himself to pay the balance at the rate of thirty-eight dollars monthly. The four monthly installments of July, August, September, and October, 1929, were paid by him. The November and December, 1929, and January and February, 1930, installments he never

paid. In March, 1930, the General Motors Acceptance Corporation paid the storage charges on the automobile and repossessed the car.

Action was instituted by respondents against appellant for the conversion of the car, the complaint alleging that the car was converted on November 4, 1929, by appellant's employee; that respondents were the owners of the automobile; that it was taken, carried away, and converted without the permission or authority of respondents; and that its then reasonable value was $1,155, for which amount recovery was demanded.

As an affirmative answer, appellant alleged that, at the time of the commencement of the action and at the time of the alleged taking and damage of the automobile, respondents were not the owners thereof; that they had a conditional contract for its purchase upon monthly payments, subject to forfeiture in the event the payments were not made according to the terms of the contract, and only a small portion of the purchase price was paid at the time of the commencement of the action; that, subsequent to the time of the acts alleged in the complaint in regard to the ownership, damage and conversion of the car, respondents refused and neglected to make the payments upon the car as provided by the conditional contract of purchase; and because thereof the holder of the vendor's interest in the contract forfeited the contract and all payments theretofore made thereon, repossessed itself of the car, and that all interest in the automobile was lost to respondents because of such forfeiture, and without the fault of appellant.

The trial of the cause to the court resulted in judgment in favor of respondents in the sum of nine hundred dollars, which the court found was the value of the car at the time it was taken by appellant.

The trial court found, among other things, in addi-

tion to the facts hereinbefore recited, that, on November 4, 1929, it was the duty of appellant to keep the road in question open for traffic during the day; that McGuire had full power and authority to act for appellant in all capacities in connection with the details of the performance under the contract with the state; that, on November 4, 1929, respondents were the owners of and in possession of the car in question under a conditional bill of sale with the vendor thereof dated June 4, 1929; that McGuire, as superintendent in the performance of the duties of appellant, and acting within the scope of his employment, and as the agent of appellant, and to carry out its business and duties, obtained possession of the car above mentioned for the sole and express purpose of driving it to Easton; that McGuire did drive the car to Easton, and then, without the knowledge or consent of respondents, drove the same from Easton to Yakima, all in the performance of the duties of the appellant and in carrying out its business and for its benefit; that, while the car was returning from Yakima and was at a place east of Easton, McGuire negligently and carelessly wrecked and damaged the car so that it was useless and for all intents and purposes a wreck.

It was further correctly found that appellant had never at any time returned the automobile or offered to return it to respondents, and that the automobile was, subsequently, in March, 1930, taken into the possession of the General Motors Acceptance Corporation, and was never returned to respondents, who have been deprived of the use and possession of it and of their rights therein.

The court refused to find, as requested by appellant, that the repossession of the car by the General Motors Acceptance Corporation, assignee of the conditional sales contract, forfeited the contract and thereby can-

celled the balance of the debt of respondents under the contract.

The first contention of appellant is that the complaint was defective for the reason that it contained allegations to support either conversion, or for damages for negligence in handling and damage to the car.

The allegations of the complaint sufficiently allege unlawful conversion, and the fact that respondents were entitled to the possession of it at the time of the unlawful conversion was proven. If the last fact were not sufficiently alleged, it is to be considered as an allegation amended by the proof at the trial. *Laucks v. Hartford Fire Ins. Co.,* 152 Wash. 241, 277 Pac. 834.

Allegation and proof of demand is not necessary when an unlawful taking has been alleged. *Richardson v. Great Western Motors,* 109 Wash. 324, 187 Pac. 333; *Hill's Garage v. Rice,* 134 Wash. 101, 234 Pac. 1023.

The use of the car by appellant was permissive within a certain limitation. It exceeded that limitation. The use of the car was a bailment, and whether gratuitous or otherwise, an allegation of delivering it to appellant or its agent for a specific use and a failure to return it, in effect, alleges a conversion. *Pregent v. Mills,* 51 Wash. 187, 98 Pac. 328. See, also, *Fidalgo Island Shingle Co. v. Brown,* 61 Wash. 516, 112 Pac. 629; *B. & B. Building Material Co. v. Winston Bros. Co.,* 158 Wash. 130, 290 Pac. 839.

The last cited case and that of *Locomotive Exchange v. Rucker Brothers,* 106 Wash. 278, 179 Pac. 859, 184 Pac. 848, are authority also to the point that appellant is liable for the loss of the car in question, even though it was lost because of the negligence of the driver.

■ It cannot be questioned that the use of the car here in question by appellant's superintendent was a necessary use in behalf of appellant; nor can it be doubted that it was within the scope of the business of appellant. Hence, when the purpose for which it was loaned by respondent was exceeded by appellant, a conversion immediately occurred.

■ Respondents, having the right to the possession and use of the automobile at the time it was wrecked, had the right also to bring action against its converter to recover the full value of the car at the time of its conversion.

"If an action of trover be instituted by one who is entitled to bring the action, though he has but a limited interest in the property alleged to have been converted, he is entitled to recover the full value of the property as against a stranger. The question as to any settlement between the plaintiff and the third person who also owns an interest in the property is not before the court." 26 R. C. L. 1152; *Messenger v. Murphy*, 33 Wash. 353, 74 Pac. 480.

In our case above cited, by the terms of a written contract title to a piano was retained in the vendor until the purchase price of two hundred fifty dollars was fully paid. The vendee had paid one hundred thirty-five dollars under the contract. The vendor claimed that the vendee's interest in the piano could not have exceeded the amount she had paid. By reference to the contract, it was found that it contained an unqualified agreement upon the vendee's part to pay the full sum with interest thereon. We held that such agreement was enforcible by the vendor, and the vendee's interest in the piano, as far as third persons were concerned, extended to its full value.

That text and case are authorities to the point that respondents are entitled to the full value of the car

here in question as of the time of its conversion. A witness for appellant fixed its value at that time as from eight hundred fifty dollars to nine hundred dollars. Respondents fixed its value at one thousand dollars. The court found its market value at the time of the conversion to have been nine hundred dollars. As this was within the competent evidence to sustain it, the finding will not be disturbed.

The defense of forfeiture, of which there was no competent evidence, was untenable and immaterial because the alleged forfeiture occurred in February, or March, 1930, while the conversion took place in November, 1929, and suit therefor was begun in January, 1930, all prior to any claim of forfeiture. Respondents were under no obligation to receive back the car, after its conversion and wrecking. They could rightly treat the act as a conversion in law and hold appellant answerable for it. *Fidalgo Island Shingle Co. v. Brown, supra.*

The judgment is affirmed.

PARKER, BEELER, and HERMAN, JJ., concur.

MAIN, J. (concurring)—I concur in the result arrived at in the majority opinion solely upon the ground that the evidence fails to show that the conditional sales contract was in fact forfeited.

MILLARD, J., concurs with MAIN, J.

BEALS, J. (dissenting)—In my opinion, respondents are entitled to recover no more than the value of their equity in the automobile. The facts in the case of *Messenger v. Murphy,* 33 Wash. 353, 74 Pac. 480, cited in the majority opinion, it seems to me differ so materially from the facts in the case at bar that the case is not an authority for granting respondents judgment against appellant for the full value of the car.

172

With the opinion of the majority on all other points, I am in hearty concurrence, but upon this phase of the case I dissent.

TOLMAN, C. J., concurs with BEALS, J.

MITCHELL, J. (dissenting)—If respondents are entitled to recover, the amount should not exceed the limitation fixed in the opinion of Judge Beals.

