[No. 29189. Department One. March 2, 1944.]

H. C. Lawson, *Appellant;* v. Herman Helmich
*et al., Respondents.*[1]

*J. P. Tonkoff,* for appellant.

*G. E. Clark,* for respondents.

Jeffers, J.—This action was instituted by H. C. Lawson, who was in possession of a certain ten-acre orchard, as vendee under an executory real estate contract, against Herman Helmich and Raymond Holmes, to recover damages for an alleged willful trespass by defendants.

[1]Reported in 146 P. (2d) 537.

Defendants, by their answer, admitted that plaintiff was purchasing the property under contract, and admitted plaintiff's right to possession, but denied any willful trespass on their part, and denied that plaintiff had been damaged by any acts of defendants.

Defendants alleged affirmatively that, on or about December 1, 1941, neither plaintiff nor defendants knew where the boundary line between the Helmich property and the land being purchased by plaintiff was located; that at that time Helmich's employee, Raymond Holmes, was engaged in pulling out and cutting up some worthless apple trees on Helmich's property, and, at the specific direction and request of plaintiff, Holmes cut about thirty apple trees situated on premises the title to which was then unknown to either plaintiff or defendants. It is further alleged that the thirty apple trees cut by Holmes were worthless.

Plaintiff, by his reply, denied the affirmative matter set up in defendants' answer.

The cause came on for hearing before the court and jury, and thereafter the jury returned a verdict in favor of plaintiff for five hundred dollars. Defendants filed a motion for judgment notwithstanding the verdict, and in the alternative for a new trial. The court granted the motion for judgment notwithstanding the verdict, denied the motion for new trial, and thereafter rendered judgment dismissing plaintiff's action with prejudice. Plaintiff has appealed from the judgment entered.

The only error assigned by appellant is in granting the motion for judgment notwithstanding the verdict.

The jury were entitled to find from the evidence, and apparently, as indicated by their verdict, did find, that on April 8, 1941, appellant entered into an executory real estate contract, containing the usual provisions for forfeiture, with Rose M. Fry, for the purchase of a ten-acre orchard in Yakima county. At that time, and at all times since, the adjoining property on the east was owned by respondent Helmich, and farmed by his employee, respondent

Holmes. During the month of December, 1941, Holmes, at the direction of Helmich, cut down three rows of apple trees along the east boundary line of the land being purchased by appellant. At the time Holmes cut these trees, appellant had had no survey definitely establishing the boundary line between the property being purchased by him and the Helmich property. However, the jury undoubtedly found that, as testified by appellant and his father, on October 16, 1941, which was before any of the trees were cut, appellant, having heard that Holmes was going to cut the trees, went to see Helmich and told him not to cut them, as he was claiming some of them; that Helmich asked appellant if he had had the property surveyed, to which appellant answered no, but that he intended to have it surveyed. There is also testimony to the effect that Holmes had been told where the boundary line was between the places. Appellant denied that he had ever given permission, either to Holmes or Helmich, to cut the trees.

While respondent Helmich and wife denied that on October 16, 1941, appellant had told Helmich not to cut the trees, and while respondents testified that appellant told Holmes to go ahead and cut them, the jury apparently accepted the testimony of appellant, and did not accept that of respondents. It is very evident that the jury did not believe the statements made by respondents, that they had no notice that appellant was claiming the trees before they were cut, or that they did not know where the boundary line was, when we consider the following special interrogatories submitted to the jury and their answers thereto:

"*Interrogatory No. 1.* Did the defendants have probable cause to believe that the apple trees they removed from the northwest quarter of the northeast quarter of the southeast quarter of section 31, township 12 north, range 19, E. W. M., Yakima county, Washington, were on land from which they had the legal right to cut said apple trees? ANSWER: No.

*"Interrogatory No. 2.* Did the plaintiff authorize defendants to cut two rows of apple trees from the northwest quarter of the northeast quarter of the southeast quarter of section 31, township 12 north, range 19, E. W. M., Yakima county, Washington? Answer: No.

*"Interrogatory No. 3.* What was the difference in the fair cash value of the property from which said apple trees were cut, before and immediately after said trees were cut? Answer: 500 00/100."

In January, 1942, after the trees had been cut, appellant employed a Mr. Hewitt, a civil engineer, to survey his property, and from this survey it appears that respondents had cut three rows of apple trees on the land being purchased by appellant. The trees removed from the Lawson tract covered from one-half to three-fourths of an acre, and there was ample evidence to support the verdict that the property was damaged to the extent of five hundred dollars. The trial court so found, as shown by its memorandum opinion in passing on the motion for a new trial.

The facts further show that, after this action was started, respondent Helmich purchased from Rose Fry, vendor, her interest in the contract, and then went to appellant and told him that if he (appellant) was not willing to accept fifty dollars in settlement of the action, respondent would forfeit the contract, appellant at that time being in arrears in his payments. Appellant refused to accept the fifty dollars, and proceeded to borrow sufficient money to pay the entire balance due on his contract, paid the same to Helmich, and received a deed to the property, so that, in fact, when the case was tried and judgment entered, appellant had full legal title to the premises.

The first question presented is whether or not one in possession of real estate, as vendee under a forfeitable executory contract, may bring an action to recover damages to the land against a third person who has caused the damage.

The theory of the trial court, as shown by its memorandum opinion, was, and the theory of respondents is, that, under the case of *Ashford v. Reese,* 132 Wash. 649, 233 Pac.

29, and other cases, we have held that a vendee under a forfeitable executory contract has no title or interest in the property, either legal or equitable; that, under the case last cited, and *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968, *Johnson v. Stalcup,* 176 Wash. 153, 28 P. (2d) 279, and *Capital Sav. & Loan Ass'n v. Convey,* 175 Wash. 224, 27 P. (2d) 136, we have held that, as between vendor and vendee, the loss resulting from damage to property, such as the removal of trees in the instant case, must fall on the vendor; that if, as between the vendor and vendee, the vendor is the one who suffers the injury, then he is the one who must maintain the action against the third party to recover damages; that a vendee's remedy in such a case as this is not against the third party who committed the wrong, but is against the vendor under the contract for a rescission and recovery of payments made, if the loss is substantial in relation to the size of the contract *(Schaefer v. Gregory Co., Ashford v. Reese,* and *Johnson v. Stalcup, supra)*, or for a credit against the balance due on the contract where the loss is relatively small *(Capital Sav. & Loan Ass'n v. Convey, supra).*

It is appellant's contention that trespass is a possessory action, and that he, as a vendee in possession, had such rights under the contract as to entitle him to bring this action.

There is no question as to what the decisions in *Ashford v. Reese, supra,* and the other cited cases hold, and no discussion of these cases would be of value here. However, in none of them was the question presented which is before us now; but, based upon those decisions, respondents contend that the only right a vendee has in a case such as this is a personal right against his vendor.

Without attempting to say just what the effect of our decisions rendered subsequent to *Ashford v. Reese, supra,* in so far as the questions therein involved are concerned, may be, we are satisfied that in subsequent decisions we have committed ourselves to the rule that the vendee under a forfeitable executory contract has a right in the land,

which, coupled with possession, is sufficient to entitle him to bring an action for damages for injury to the land caused by removal of trees, as in the instant case.

The case of *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 280 Pac. 350, does not present a factual situation such as is present in the instant case, but it is of interest on the question of the vendee's rights under a forfeitable executory contract. In the cited case, an attempt was made to attach the interest of William and George Joseph, vendees under an executory contract. At the time the attachment was levied, the Josephs had paid some forty thousand dollars on an agreed purchase price of seventy-five thousand dollars. The contentions of the respective parties are shown by the following statement in the opinion:

"The orchard company says that, under the contract, the purchasers [Josephs] had such rights that it [plaintiff] had a right to levy an attachment upon the property described in the contract in the manner in which the statute provides for the levying of attachments upon real property. The Josephs say that the purchasers under the contract had no interest in the property which was subject to be attached as real property and therefore the trial court properly quashed the service."

(The trial court, in quashing the service, undoubtedly followed our decisions, such as *Schaefer v. Gregory Co., supra,* wherein we had stated that, while a contract such as the one before the court remains executory and forfeitable, it creates no interest in the land in the vendee, and that he has no legal or equitable title to or interest in the land until the contract has been fully performed.)

While the opinion in the *Oatey Orchards* case refers only to Rem. Rev. Stat., § 659 [P. C. § 7391], which pertains to the manner of executing a writ of attachment, it seems to us the court must have had in mind Rem. Rev. Stat., § 647 [P. C. § 7379], which provides:

"The plaintiff at the time of commencing an action, or at any time afterward before judgment, may have the *property* of the defendant, or that of any one or more of several defendants, attached in the manner hereinafter pre-

scribed, as security for the satisfaction of such judgment as he may recover." (Italics ours.)

Now having in mind that it is *property* of the defendant which can be attached, let us look at § 659, *supra,* which provides in part:

"The sheriff to whom the writ is directed and delivered must execute the same without delay as follows:

"1. *Real property* shall be attached by filing a copy of the writ, together with a description of the property attached, with the county auditor of the county in which the attached real estate is situated." (Italics ours.)

The court then states that the words "real property" have a comprehensive meaning which includes not only the land and whatever is erected or growing thereon, or affixed thereto, but also rights issuing out of, annexed to, and exercisable within or about the land. Under the contract, the Josephs had a right to the possession of the land, the right to the dominion and control thereof, and the right to care for, cultivate, and harvest the crops grown thereon. These are rights which do not rise to the dignity of title, either legal or equitable, but which are annexed to and exercisable with reference to the land, and therefore come within the definition of "real property."

The opinion refers to *Ashford v. Reese, supra,* and *Oliver v. McEachran,* 149 Wash. 433, 271 Pac. 93, and, in discussing the case of *Casey v. Edwards,* 123 Wash. 661, 212 Pac. 1082, the court stated that in the case last cited there was language used which was not necessary to a decision of the case, to the effect that the purchaser of land under an executory contract which contained a forfeitable clause had only *a personal property right prior to the time that the consideration had been fully paid,* continuing: "The language of that case, so far as it is out of harmony with what is hereinbefore said, will be considered set aside." The opinion concludes:

"The Josephs, in the case now before us, having rights in the property covered by the contract which come within the designation of real property, the attachment was prop-

erly levied in the manner provided for the levy of the writ upon real property."

The judgment of the lower court was reversed.

In *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705, we stated:

"Whatever this court may have said heretofore on the question of the effect of such contracts in *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968; *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, or *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293, we now say that it creates a right enforceable against the land which is the subject of the contract; a right which cannot be taken away by either the grantor in the contract or by any one, with notice of the contract, claiming under, by or through the grantor, unless for a breach of the conditions of the contract by the grantee.

"The real beneficial interest remaining in the grantors was the right to receive the payments as they fell due on the contract."

We also call attention to the case of *In re Horse Heaven Irrigation Dist.,* 11 Wn. (2d) 218, 118 P. (2d) 972, wherein we held that certain vendees under executory contracts to purchase land within the district were entitled as *property holders* to share in the distribution of the assets of the corporation after its dissolution.

In view of the decisions in the cases last referred to, it seems to us that it is almost impossible to escape the conclusion that a vendee under a forfeitable executory contract has an interest in the subject matter of the contract (the land), and that this interest, coupled with possession, is a sufficient basis for such a vendee to institute an action for trespass.

In the instant case, the action was undoubtedly brought on the theory that the cutting and removal of the apple trees was an injury to the land, although such removal was also a damage to appellant's possession, for counsel for both parties seem to have agreed, and the court instructed the jury, that the measure of damages was the difference between the fair cash market value of the land

with the trees growing upon it and its value after the trees were removed.

Appellant cites 63 C. J. 888, § 4, which provides in part as follows: "The gist of the action for trespass to property is disturbance of possession"; p. 893, § 11: "Trespass on realty is an entry upon another's possession unlawfuly and with force"; p. 902, § 19:

"As a general rule, to recover for trespass, plaintiff must either have title to, or possession of, the land, depending on whether it is vacant or occupied. . . . Since, generally, the right of action must exist at the time of the trespass, plaintiff must have possession, or the right of possession at that time";

p. 907, § 24: "Possession is sufficient to maintain trespass when coupled with some interest in the land."

Under this last statement is cited the case of *Wendel v. Spokane County,* 27 Wash. 121, 67 Pac. 576, 91 Am. St. 825. While the cited case was decided long before *Ashford v. Reese, supra,* and involves an entry on government land, we cite it as showing that this court has recognized that one who at least had no title to the land occupied by him could bring an action against a third party for damages to the property. As a basis for his right to maintain the action in the cited case, the plaintiff alleged that he had entered the lands as a homestead under the homestead laws, and that he and his wife had ever since lived on the lands and cultivated same, *but had not yet made final proof.* Then follows a statement of the acts claimed to have been committed by Spokane county, which damaged the land. A demurrer was interposed to the complaint, and sustained, and plaintiff electing to stand on his complaint, the action was dismissed. Plaintiff appealed. The opinion states:

"It is claimed by the respondent that there was not sufficient allegation of ownership in the land to maintain this action. We think, however, that the allegations set forth in the complaint above noted were sufficient."

The judgment of the lower court was reversed, with instructions to overrule the demurrer.

While the question is not discussed in the cited case, we assume that a settler upon lands under the homestead laws has no title to the lands settled upon and occupied by him, at least not until he has made final proof, and that therefore the rights of plaintiff in the cited case must have been based largely upon possession.

While the case of *Helf v. Hansen & Keller Truck Co.,* 167 Wash. 206, 9 P. (2d) 110, involved the question of damages to personal property, we discuss it here because it is referred to in the case of *Peters v. Bellingham Coal Mines,* 173 Wash. 123, 21 P. (2d) 1024, which we shall later discuss. The headnote in the *Helf* case states:

"A conditional sales vendee of an automobile may maintain an action for damages for its injury, even though subsequent to institution of the suit, the vendor repossessed the car and forfeited the contract."

The cited case clearly indicates that this court has changed its position relative to the rights of a vendee under a conditional sales contract. We quote from the opinion:

"We have not overlooked the case of *Peterson v. Chess,* 92 Wash. 682, 159 Pac. 894, where it was held that the vendee of a motorcycle under a conditional sales contract could not recover for damages to the machine where it appeared that he had no interest therein at the time the action was commenced or at the time of the trial, the vendors having taken possession after the accident. But the rule of that case was abrogated by the case of *Stotts v. Puget Sound Tr. L. & P. Co., supra* [94 Wash. 339, 162 Pac. 519], holding that the rights of a vendee under a conditional sales contract are the same as those of a bailee of personal property, and the case of *Burnett v. Edw. J. Dunnigan, Inc., supra* [165 Wash. 164, 4 P. (2d) 829], to the effect that the vendee of an automobile under a conditional sales contract may maintain an action for its conversion even though, subsequent to the conversion and the institution of the action, the automobile had been repossessed by the vendor.

"The respondent [vendee] had a right to maintain the action even though, subsequent to its institution, the finance company repossessed the automobile and forfeited the contract."

We now come to the case of *Peters v. Bellingham Coal Mines, supra,* which, in our opinion, is decisive of the question here presented. In fairness to the trial court, it may be stated that; while this case was submitted to us at the time of argument, it was not mentioned in the briefs, and we assume was not presented to the trial court.

In the cited case, an action was brought by several parties, joining as parties plaintiff, but setting up their respective rights in the property claimed to have been damaged by the coal company. The action was based upon damage to the land caused by the operation of the coal company. One of the plaintiffs was Akerberg, who was in possession of a particular part of the land and the improvements thereon, as vendee under an executory contract. Akerberg, as well as the other plaintiffs, recovered in the lower court, and the coal company appealed. In regard to the right of Akerberg to maintain the action, we stated:

"Appellant further contends that respondent Akerberg does not have sufficient title to sue, being merely the holder of a forfeitable, executory contract of purchase.

"The evidence shows that Akerberg was in possession of the land and the improvements thereon under his contract, which is *possession of an interest in real estate,* and, even though it be forfeitable, we have committed ourselves to the rule that, in the case of personal property held under executory contracts of purchase, the vendee in possession may *maintain an action for damages to the property. Helf v. Hansen & Keller Truck Co.,* 167 Wash. 206, 9 P. (2d) 110. The rule should be at least as strong in cases of real estate purchase contracts. The court was therefore correct in submitting the case of Akerberg to the jury." (Italics ours.)

The cited case has never been modified or reversed; in fact, so far as we have been able to find, it has never been cited in a subsequent case, probably because the precise question there presented has not been before the courts. And so, in conclusion on this question, it is our opinion that, regardless of what may be said as to the effect of *Ashford v. Reese, supra,* or our decisions subsequent thereto, which deal with the question of the right of such a vendee

to rescind, the *Peters* case, *supra,* is controlling and decisive of the question here under consideration.

■ It is also contended by respondents that, under paragraph five of the contract, the seller and the seller only had the right to sue for and to collect for any damages to the property.

It is apparent from the record, as shown by the statement of facts and the court's memorandum opinion, that this question was never presented to or considered by the trial court. At the close of appellant's case, respondents moved to dismiss the action, basing their motion upon two grounds: First, that appellant, being merely a contract purchaser, had no title, either legal or equitable, in the real property, and therefore could not maintain this action; and second, that, if appellant did have a cause of action against respondents on account of the trespass and removal of the trees, appellant waived his right of action by accepting a deed to the premises from Helmich, who was then the legal owner of the property. The court reserved its ruling on the motion, but allowed the case to proceed. The same motion was made by respondents at the close of all the evidence, and upon the same grounds. The motion was denied, and the case went to the jury.

It is equally apparent that this question was not raised on respondents' motion for judgment notwithstanding the verdict, for the court stated in its memorandum opinion:

"The first and principal question raised by the defendants [respondents] upon their motion for judgment notwithstanding the verdict is whether or not the plaintiff [appellant], as the vendee under a forfeitable executory contract of purchase, could maintain an action for damages for injury to said property by the unlawful removal of trees therefrom."

The only other question presented, as shown by the memorandum decision, was the question of the claimed waiver.

It does not appear that respondents, until such claim was made in their brief, ever contended that appellant could not bring this action because of the provision of paragraph

five of the contract. It seems obvious to us that respondents did not rely on this provision of the contract, for if they had, and their contention had been upheld, that would have settled the matter, and it would not have been necessary for the trial court to consider the case of *Ashford v. Reese, supra,* and many other cases. This question not having been presented to or considered by the trial court, respondents are not entitled to have it considered here. See *Unemployment Compensation Department v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89, and cases therein cited. However, we are satisfied that the contract does not sustain respondents' contention, as the damages referred to in paragraph five are damages caused by eminent domain proceedings.

■ The last contention made by respondent to sustain the judgment is that appellant waived any claim for damages he may have had against respondents by paying to respondent Helmich the balance due on the purchase price and accepting from Helmich a deed to the property, it being argued by respondents that by so doing appellant accepted the property in the condition it then was. The trial court was in accord with this contention.

To sustain their contention, respondents quote from 27 R. C. L., p. 658, § 420, which deals with the effect of a waiver on the right to rescind in fraud cases. They also cite *Keylon v. Inch,* 178 Wash. 522, 35 P. (2d) 73; *Bonded Adjustment Co. v. Anderson,* 186 Wash. 226, 57 P. (2d) 1046, 106 A. L. R. 166; and *Buob v. Feenaughty Machinery Co.,* 191 Wash. 477, 71 P. (2d) 559. These authorities are not controlling here. They were actions based upon fraud and deceit, and misrepresentation as to the subject matter, by reason of which the plaintiffs in the respective actions were induced to purchase the real estate or personal property, as the case might be. The question is presented in each case as to whether or not the purchaser had waived any right to damages by his subsequent acts. No question is raised relative to a right of action against a third party. In *Hopkins v. Northwestern etc. Ins. Co.,* 41 Wash. 592, 83 Pac. 1019, we stated:

"A waiver is defined to be the intentional relinquishment of a known right, and there can be no waiver unless the person against whom the waiver is claimed had a full knowledge of his rights. 29 Am. & Eng. Ency. Law, 1093, and cases cited. It was held, in *Hamilton v. Home Fire Ins. Co.*, 42 Neb. 883, 61 N. W. 93, that knowledge of the existence of a right and the *intention* to relinquish it must concur to create an estoppel by waiver.

"Neither will waiver be implied from slight circumstances, but must be evidenced by an unequivocal and decisive act clearly proven. 29 Am. & Eng. Ency. Law 1105.

"Neither can it be inferred that a party waives his right under a contract by making a payment thereunder, while at the same time making demand for his rights. *Griffith v. Newel.* (S. C.), 48 S. E. 259. It is also announced in 29 Am. & Eng. Ency. Law, 1095, that the validity of a waiver requires that it shall have been made intentionally and voluntarily; that voluntary choice is of the essence of waiver, and the view that waiver is a legal result operating upon a certain state of facts, *independent of intent*, has been declared to be without foundation. The same authority, on page 1096, further declares, in accordance with the authorities cited, *that the existence of an intent to waive is a question of fact, and must be made clearly to appear*." (Italics ours.)

See, also, 67 C. J., p. 289 *et seq.*, under the general heading "Waiver." At p. 311, § 13, we find this statement:

"Waiver, it has been stated, is a mixed question of law and fact. Within general rules applicable to the trial of civil cases, whether or not there has been a waiver in a given case is ordinarily a question of fact, for the jury to decide, under proper instructions of the court. . . . If the established facts permit reasonable minds to differ as to the inferences or effects from them, a question of fact arises, to be determined by court or jury, according as the parties see fit to submit the controversy for decision."

We are satisfied the question of whether or not appellant waived his right of action against respondents by accepting a deed from Helmich became a question of fact for the jury to determine, and the jury having determined by their verdict that appellant had not waived his right to bring this

action, the trial court erred in granting judgment notwithstanding the verdict on the ground of waiver.

While none of the instructions are before us, we assume the jury were properly instructed on the question of waiver.

The jury having found that the actual damage caused by the removal of the trees was five hundred dollars, and having further found that the trespass was willful, appellant is entitled, under Rem. Rev. Stat., § 939 [P. C. § 8557], to have judgment for treble the amount of the actual damage.

We are not called upon to decide, and we do not determine, whether or not the original vendor may have had the right to intervene in this action, nor do we determine the rights of a defendant trespasser to require that the vendor be made a party to an action such as this instituted by the vendee.

For the reasons herein assigned, the judgment of the trial court is reversed, with direction to deny respondents' motion for judgment notwithstanding the verdict and enter judgment in favor of appellant and against respondents, jointly and individually, in the sum of fifteen hundred dollars.

SIMPSON, C. J., BEALS, STEINERT, and BLAKE, JJ., concur.