[No. 24321. Department One. May 12, 1933.]

CHARLES A. PETERS *et al., Respondents,* v. BELLINGHAM COAL MINES, *Appellant.*[1]

[1]Reported in 21 P. (2d) 1024.

124

*Howard & Kindall* and *Stratton & Kane*, for appellant.

*Pemberton & Robinson, Roberts, Skeel & Holman, Tyre H. Hollander, John C. Bowen, Cake & Cake,* and *W. F. Fisher,* for respondents.

HOLCOMB, J.—Charles A. Peters and four others, each the owner of separate residence property, all within a radius of approximately two hundred feet, commenced this action in the court below for recovery of damages from appellant. The damages claimed are for alleged subsidence of the surface of, and resultant damage to, the several properties of respondents caused by the mining of coal thereunder by appellant. While the five respondents join in one complaint in the

action, each sets up his separate damages in a separate cause of action. No question is made against this manner of joinder in one action.

The theory of each claim of recovery is the same as to the fact of the subsidence of the surface of the several properties, the surface of all having subsided at the same time; the same as to the mining by appellant being the cause of the subsidence; and the same as to the resultant damages, except as to the separate amounts thereof as to the properties. The theory of the defense is that the mining by appellant was not the cause of the subsidence of the surface of any of the properties; that, if its mining did cause the subsidence, that was not the result of any negligence on its part; and that it was within its contract rights in mining under the surface of the properties, and not liable to any of respondents therefor, other than for negligence in its failure to effectively support the surface of their properties.

The cause was tried in the superior court, sitting with a jury, and resulted in separate verdicts against appellant, awarding damages to each of respondents, aggregating $9,450. Judgments were rendered accordingly, from which appeal is brought to this court.

On August 27, 1918, the Bellingham Bay Improvement Company, a corporation, owned several hundred acres of land, which included the lands of these later acquired residence properties of respondents. On that day, it entered into a coal mining lease with John C. Eden and Michael Earles, by which they were accorded the privilege of mining the coal under the surface of the described lands, which included these after acquired residence properties of respondents. That lease contained, among others, these provisions:

"(5) Lessee is to indemnify lessor against all claims for damages which the lessor may suffer or be

subjected to on account of damage or injury to the surface lands embraced in this lease which the lessor has heretofore sold, in writing agreed to sell, or has conveyed, either for private use or for highways, streets, alleys or other public places, including the following described lands privately sold, as such lands or any part thereof may be damaged as the result of the removal of the underlying coal. The public highways, streets, alleys and public places above referred to shall include not only those now existing but also all that may be hereafter in any manner created. A description of the lands privately sold which are subject to the provisions of this paragraph are described as all that portion of the Southwest quarter (SW ¼) of Section thirteen (13), Township thirty-eight (38) North Range Two (2) East Willamette Meridian, lying Northeast of the Northwest Diagonal (Ferndale) road, as the same is now laid out, constructed and improved. There are also one hundred and forty-two and five-tenths acres more or less in the Southeast quarter (SE ¼) of said section thirteen (13) under lease from the lessor to Bellingham Golf & Country Club, for golf and country club purposes only, and lessee shall conduct all mining and other operations hereunder in such a manner as not to interfere with the surface rights to such leasehold for golf and country club purposes.

"As to damage to the surface of the remainder of the lands embraced in this lease, lessee shall exercise the right to mine and remove the coal from such lands in such manner and by use from time to time of such approved mining process and methods as are best calculated to prevent the sinking of the surface of such lands."

On September 3, 1918, Eden and Earles assigned the lease and all their rights thereunder to appellant, it assuming all the obligations of the lease, the Bellingham Bay Improvement Company consenting to that assignment. On December 26, 1919, the Bellingham Bay Improvement Company, remaining the owner of the lands subject to the mining lease, caused to be platted, as an addition to the city of Bellingham, a

considerable portion of the leased lands into lots, blocks and streets, dedicating the latter to public use, all subject to the mining rights of appellant under the terms of the lease. Thereafter, each of respondents became the owner, or vendee under an executory contract in the case of Akerberg, of his residence property here in question, consisting of a well-constructed one-story dwelling situated on a moderately-sized tract of land. Respondents Peters, Pelcer and Wegley acquired their titles subsequent to the completion of mining operations under their lands.

Soon after the assignment of the lease to appellant, it commenced to mine, and has continued to mine and remove, coal from under the leased lands by so-called "room and pillar" system. It so mined directly under all the properties of respondents, honeycombing the earth thereunder on levels from a depth of 225 to 450 feet below the surface, leaving rooms averaging about twenty feet in width, with pillars between averaging a little wider; thus removing some forty-five per cent of the coal and other material supporting the material above. Appellant ceased mining under the properties of respondents about April 15, 1927, leaving the then existing honeycombed condition. About April 30, 1930, the surface of each of respondents' properties subsided, resulting in damage to each, for which recoveries were sought and awarded in this action.

It is first contended in behalf of appellant that the evidence does not support any of the awards, and that the trial court should have so decided, as a matter of law, in that the evidence does not support a finding that the subsidence of the surface was caused by the mining and removal of the coal below the surface. The honeycombed condition of the earth left by the mining done by appellant under the surface of respondents' properties, as to which there is no substantial dispute,

and the absence of any other probable cause of the subsidence, as the jury could well believe from the evidence, are decisive against this contention. There was ample and competent evidence to sustain a finding that the mining by appellant and the condition left by it as the result of such mining was the cause of the subsidence and the damage to all the properties of respondents.

It is further contended in behalf of appellant that, in any event, it would not be liable for any damage resulting from the subsidence of the surface of the properties of respondents, except such subsidence as was the result of its negligence in mining thereunder, and that the evidence does not support a finding of any such negligence. The evidence is very voluminous touching the question of the negligent manner of mining and removing the supporting coal and other material, in view of the supporting strength of the pillars, the nature of the material to be supported, and other conditions which the evidence warranted the jury in considering. There was much evidence of expert opinion character supporting the view that the mining was carried on by such approved mining processes and methods as are best calculated to prevent the sinking of the surface. But there was also much evidence of the actual physical conditions under the several properties of respondents where the room and pillar mining was carried on, particularly as to the nature of the material to be there supported.

To review the voluminous evidence touching the question of appellant's negligence in mining and in leaving that portion of the mine in the condition in which it was left, with a view of demonstrating as to whether or not there was sufficient evidence to warrant the jury in finding that appellant was negligent, would be too long a story to here relate. We pass that par-

ticular inquiry by observing that the evidence seems to, in a substantial degree, show negligence on the part of appellant. However, we pass to another consideration which, we think, is of greater moment and more decisive against appellant as to its being absolved from liability, as a matter of law.

The law is well settled that the right of a land owner to have subjacent support is substantially the same as his right to have lateral support; and, in the absence of some clearly expressed contractual right, given by the owner, waiving his right to lateral or subjacent support to some other person, his right to such support to his land and the surface thereof is absolute, and all who disturb such support are absolutely liable, regardless of their negligence in exercising their alleged rights in adjoining property or in the earth under the surface. This is but an application of the ancient maxim that ''one should so use his own property as not to injure the rights of another.'' *Farnandis v. Great Northern R. Co.,* 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A. (N. S.) 1086; *Hummel v. Peterson,* 69 Wash. 143, 124 Pac. 400; *Johanson v. Seattle,* 80 Wash. 527, 141 Pac. 1032; *Williams v. Hay,* 120 Pa. St. 485, 14 Atl. 379, 6 Am. St. 719; *Piedmont etc. Coal Co. v. Kearney,* 114 Md. 496, 79 Atl. 1013; *Burt v. Rocky Mountain Fuel Co.,* 71 Colo. 205, 205 Pac. 741; *Cole v. Signal Knob Coal Co.,* 95 W. Va. 702, 122 S. E. 268, 35 A. L. R. 1134, and notes; 18 R. C. L. 141.

The case of *Williams v. Hay,* 120 Pa. St. 485, 14 Atl. 379, 6 Am. St. 719, is quite generally regarded as a leading decision of the courts of this country touching the question of the land owner, by contract, waiving his right of subjacent support in favor of mining rights of another thereunder, in which it was contended that

the defendant, in mining under the surface, was liable only for negligence resulting in disturbance of the surface. Holding that the contract which gave the right of mining below the surface did not result in the owner's waiver of absolute right of support of the surface, the court said:

"The defendant below contended that as to the tract of 241 acres the right to surface support was waived by the terms of the deed from W. J. Baer conveying the surface and reserving the right to the underlying coal. The words of the deed relied upon are as follows: 'Provided, however, that the said W. J. Baer, his heirs and assigns, in mining and removing the coals, iron ore, and minerals aforesaid, shall do as little damage to the surface as possible.'

"It was urged that this language implies that some damage would necessarily ensue to the surface in mining the coal. But an absolute right to surface support is not to be taken away by a mere implication from language which does not necessarily import such a result. The owner of the coal had certain surface rights which were indispensable to the carrying on of his mining operations, such as the right to go upon the surface to make explorations for the minerals beneath, and bore holes, sink shafts, drifts, etc., and the right to make roads and erect structures for taking out the coal. Hence it is a fair construction of the deed to say that in doing these things as little damage was to be done to the surface as possible. The provision referred to covers these matters, and as we have a subject to which it directly applies, it would be a' strained interpretation of the deed to hold that it was intended to take away the right of surface support."

This view was adhered to in *Weaver v. Berwind-White Coal Co.,* 216 Pa. St. 195, 65 Atl. 545, and *Dignan v. Altoona Coal & Coke Co.,* 222 Pa. St. 390, 71 Atl. 845, 128 Am. St. 812. In *Piedmont etc. Coal Co. v. Kearney,* 114 Md. 496, 79 Atl. 1013, the contract right invoked as a waiver of the surface owner's absolute right of support was as follows:

" . . . 'except, however, all coal and other minerals on or underlying said above granted property to the same extent and in like manner as excepted in the said deed from Maria Reese *et al.* to Daniel Ritchey and Stewart Arnold, above described.' In the deed referred to is this reservation: 'The parties of the first part reserve to themselves, their heirs and assigns, all coal and other minerals that have been or may hereafter be found on or in the said lands, together with the right to mine and remove the said coal or minerals at such place or places as may appear to them, the said first parties, their heirs or assigns, most suitable and convenient by tramroad, plane and dump houses or otherwise,' etc."

Holding that this language did not constitute such waiver, the court said:

"When the doctrine or right of subjacent support is recognized, as it is with practical unanimity by the authorities, it seems to us to be far better to require those who desire to enter into stipulations by which the one party to the transaction is to part with the right which the law gives him, and the other is to be relieved of a duty which the law imposes upon him, to use language that will necessarily import or clearly express such intention. It should be either by express words or necessary implication, and in our judgment the language used in this reservation was not sufficient to relieve the appellant of its duty to support the surface. It is also held by the authorities that a failure to leave sufficient support for the surface is negligence and may be so declared on."

See, also, *Evans Fuel Co. v. Leyda,* 77 Colo. 356, 236 Pac. 1023.

In *Catron v. South Butte Mining Co.,* 181 Fed. 941, the ninth Federal circuit court of appeals held:

"And it is well settled that the grant of the surface, with a reservation of the minerals and the right to extract the same, does not permit the destruction of the surface, unless the right to do so has been expressed in terms so plain as to admit of no doubt."

After an attentive examination of all the texts and authorities cited by appellant, it is clear that the provision in the lease in question that:

"As to damage to the surface of the remainder of the lands embraced in this lease, lessee shall exercise the right to mine and remove the coal from such lands in such manner and by use from time to time of such approved mining process and methods as are best calculated to prevent the sinking of the surface of such lands;"

is not such an explicit waiver of the right to destroy the surface as to admit of no doubt, as expressed in the *Catron* case, *supra*.

Appellant further contends that respondent Akerberg does not have sufficient title to sue, being merely the holder of a forfeitable, executory contract of purchase.

The evidence shows that Akerberg was in possession of the land and the improvements thereon under his contract, which is possession of an interest in real estate, and, even though it be forfeitable, we have committed ourselves to the rule that, in the case of personal property held under executory contracts of purchase, the vendee in possession may maintain an action for damages to the property. *Helf v. Hansen & Keller Truck Co.*, 167 Wash. 206, 9 P. (2d) 110. The rule should be at least as strong in cases of real estate purchase contracts. The court was therefore correct in submitting the case of Akerberg to the jury.

Appellant further contends that respondents Peters, Pelcer and Wegley, having acquired title subsequent to the completion of the mining under their lands, acquired no right of action by reason of such mining.

The record shows that the subsidence had not occurred when they acquired title to their properties. The damage occurred later, on April 30, 1930. Evi-

dently, it could not have been anticipated, and their rights of action are as complete as they would have been had they acquired title before the termination of the mining operations.

■ It is also contended that each cause of action is barred by the statute of limitations. This contention is untenable for the reasons just above stated.

■ At the trial, the court admitted evidence of similar disturbances on the surface from the operations of the mine distant from and not connected with the surface of the lands of respondents. The testimony so admitted was by witnesses as to the locations of the disturbances, and by an expert as to the cause thereof. Since according to the record, the removal of the coal was one continuous operation pursuant to one system followed by appellant, and the same results occurred elsewhere, the testimony as to such results elsewhere from the operations conducted by appellant, was pertinent and admissible. See *Abrams v. Seattle & Montana Ry. Co.*, 27 Wash. 507, 68 Pac. 78, which, while not exactly in point on this question, is analogous. Cf. *Noland v. Great Northern Railway Co.*, 31 Wash. 430, 71 Pac. 1098; *Johnson v. Olson Company*, 152 Wash. 646, 278 Pac. 699, 66 A. L. R. 77.

Complaint is made of the refusal of instructions requested by appellant and of certain portions of other instructions given. An examination of the instructions given and those requested which were refused, without unduly extending the opinion by setting them forth in full, discloses that the instructions given and refused were consistent with the law as we have here found it to be, and were as favorable to appellant as could have been given.

We can find no error warranting a reversal of any of the judgments, and they will stand affirmed.

BEALS, C. J., MITCHELL, and MILLARD, JJ., concur.