KANGAS-JACOBSEN DAIRY, INC., v. MARJORIE FLEMING LLOYD-SMITH AND OTHERS.[1]

February 26, 1954.

No. 36,147.

[1]Reported in 62 N. W. (2d) 915.

318

*Butchart & Fredin,* for appellant.

*Stone, Manthey & Carey,* for respondents.

*W. K. Montague* of *Nye, Montague, Sullivan, Atmore & McMillan, amicus curiae.*

KNUTSON, JUSTICE.

Appeal from an order of the court overruling portions of plaintiff's demurrer to answers interposed by defendants.

This action was brought to recover damages alleged to have occurred when land on which plaintiff had erected a creamery building subsided. The appeal being from an order overruling a demurrer, we must look to the pleadings for the facts. Plaintiff's complaint alleges that on September 29, 1939, defendants Kate Fowler Merle-Smith and Marjorie Fleming Lloyd-Smith, referred to hereinafter for clarity and brevity as the Smith defendants, were the owners of certain land in St. Louis county. The legal description is immaterial here, so it has been omitted, although it is set forth in full in the complaint. It is alleged that these defendants separated the mineral and surface ownership of said land and conveyed away the surface, which by a series of conveyances vested in plaintiff on September 9, 1949. The mineral rights were conveyed to the trustee defendants, who still retain such rights. It is then alleged that the minerals underlying said tract were mined for the benefit of the Smith defendants; that the subjacent strata was left without sufficient support to maintain the integrity of the surface; that, after severance of the surface and mineral rights and con-

veyances of the surface, said defendants failed to furnish adequate support to maintain the surface; that, after the acquisition of the mineral rights, the trustee defendants failed to maintain sufficient support of the strata underlying said tract; and that by reason of the failure to maintain subjacent support the surface cracked, subsided, and caved, causing damage to plaintiff's land and its building erected thereon for which it seeks to recover damages.

The Smith defendants and the trustee defendants interposed separate answers, which are identical except that in the answer of the Smith defendants paragraph XXI, which will be set forth hereinafter, is omitted. We shall discuss the legal issues involved as if the answers were the same.

The answers first contain a general denial of all matters not admitted, qualified, or explained. They admit that prior to September 29, 1939, the Smith defendants owned the property and that on September 9, 1949, plaintiff became the owner of the surface of the land and erected a building thereon, a part of which settled and was damaged. They admit the conveyance of the mineral rights to the trustee defendants. The answers then allege the conveyances in the chain of title from the Smith defendants to plaintiff, the original deed containing the following reservation:

"Excepting and reserving unto said Grantors all minerals on, in or under said parcel of land, together with the usual rights and privileges of entering upon, exploring for and mining and removing the same; together with the right of going to and from any mines thereof or any mining operations thereof on said land; * * *."

Succeeding deeds in the chain of title leading to plaintiff's ownership contained the following exception:

"Except minerals and mineral rights in which the said first party never had any interest."

Thereafter follow the defenses alleged, which we deem it advisable to set forth in full, as follows:

## "XI.

"Allege that prior to the times herein mentioned, said Government Lot One (1) was with other adjoining lands leased by the owners

thereof to the Oliver Iron Mining Company under a mining lease which authorized said mining company to mine the iron ore from said lands and the said Lessee for many years carried on mining operations thereon. That in connection with such mining operations, the said Lessee built shafts, dug tunnels and drifts into the ore body, and caved the surface of said lands, in order to extract the ore therefrom. *The iron ore on said lands was mined with due care and skill according to the usual mining practices in the region where said land was located.* That no mining operations have been carried on since the year 1922 upon said lands.

## "XII.

"That the plaintiff was at all times aware of and had full knowledge of the fact that said land had been mined by underground mining and knew or should have known subsidence had occurred as a result of such mining and should have ascertained that further subsidence would occur in the future.

## "XIII.

*"That plaintiff's predecessor in interest had full knowledge of the fact that said land had been mined by underground mining and that in connection with such mining the surface of said land had subsided and that further subsidence would occur in the future.*

## "XIV.

"That after the surface of said land was conveyed, the surface owners other than plaintiff caused large quantities of earth and materials stripped from other lands to be deposited upon the surface of the land described in plaintiff's Amended Complaint, and upon adjoining lands, and in the mine shaft located upon the land described in the Amended Complaint.

## "XV.

"That the plaintiffs caused additional material to be filled and deposited upon said caved area and that the weight of such material deposited upon said lands, shaft and caved area by plaintiff's predecessors in interest and by the plaintiffs and the weight of the structure erected thereon by plaintiff, substantially increased the burden of the surface of said land.

"XVI.

"That the aforesaid acts of plaintiffs contributed to and caused further subsidence of the surface and the damages complained of by plaintiff.

"XVII.

*"Specifically deny that defendants owe any obligation to plaintiff to provide subjacent support of the surface of said land* and further deny that defendants owe any obligation to plaintiff to support its building or other additional materials placed upon the land.

"XVIII.

*"That defendants Marjorie Fleming Lloyd-Smith and Kate Fowler Merle-Smith sold and conveyed said lands, except minerals, at a reduced price because said lands were caved by mining operations and the surface thereof had been and was subsiding from previous mining, and said Samuel B. Phillips had full and complete knowledge thereof, and negotiated for the purchase of said lands at a reduced price because of the conditions existing thereon, and that said Samuel B. Phillips waived all right to subjacent support.*

"XIX.

*"Allege that if subsidence of the surface caused damage to plaintiff's property, the same was caused through the carelessness and negligence of the plaintiff and that plaintiffs predecessor in interest had full knowledge of the mining operations conducted at and under said land, that the said ground was caving and the surface had subsided because of mining operations and that further subsidence might occur; and that plaintiff without taking soundings or otherwise testing the ground recklessly, carelessly and negligently erected a building partly over the mine tunnels and mine caves.*

"XX.

*"That more than six years have elapsed since the mining which was the cause of the subsidence was done, and this action is barred by the statute of limitations.*

"XXI.

*"As a further defense, defendants allege that all of the marketable iron ore on the lands described in the Complaint herein have been removed prior to the year 1923 and that the value of the interest of*

*defendant trustees in the minerals on said lands is nominal, and that their title to said lands is not subject to any obligation to provide subjacent support to plaintiff."* (Italics supplied.)

In reply plaintiff denied the allegations of paragraph XVI and demurred to all other matters set forth in the answers on the ground that they did not constitute a defense. The court sustained the demurrer as to all parts of the answers set forth in italics above and overruled the demurrer as to the balance, certifying the questions raised by that part of the order overruling the demurrer as important and doubtful. No appeal has been taken from the order insofar as it sustains the demurrer. Plaintiff appeals from that part of the order overruling its demurrer. Plaintiff has assigned no error as to the overruling of the demurrer to parts of the answer preceding the paragraphs quoted above, so we are not concerned with such allegations here. The question now before us is whether the balance of the answer, not italicized above, constitutes a defense to plaintiff's cause of action as alleged in its complaint.

All that remains of the answers, insofar as this decision is concerned, is part of paragraph XI, all of paragraphs XII, XIV, and XV, and part of paragraph XVII, together with paragraph XVI, which is denied by the reply and not involved in the demurrer. Some of the paragraphs remaining can be easily disposed of. That part of paragraph XI remaining consists of evidentiary matters over which there seems to be no dispute. The assignments of error raise no question respecting such allegations. They properly are left in the answer. The answers set forth a number of separate defenses. While they are not pleaded separately as they should have been, the trial court apparently treated them as separate defenses. Generally, where a demurrer is interposed to a whole pleading and such pleading contains one good defense, the demurrer is bad. 5 Dunnell, Dig. & Supp. § 7543. See, Smith v. Smith, 204 Minn. 255, 283 N. W. 239. Inasmuch as the parties have raised no objection and the trial court has treated the case as if there had been a demurrer to the separate defenses pleaded, we will so treat it for the purposes of this appeal. See, J. W. Bass & Co. v. Upton,

1 Minn. 292 (408). The question is not likely to arise again in view of the fact that demurrers have now been abolished. With that in mind, paragraphs XIV and XV must be read together with paragraph XVI. The demurrer does not reach paragraph XVI, but the allegations thereof are denied and are at issue. It was proper to overrule the demurrer as to paragraphs XIV and XV under such circumstances. The remaining portion of paragraph XVII is nothing but a denial of liability. The general denial of all matters not admitted would have accomplished the same purpose.

This leaves for our consideration only paragraph XII. It is apparent that plaintiff desires to have us pass upon many questions not before us on this record. The law pertaining to the rights of the surface owners of land under which minerals have been removed or will be removed in the future to have subjacent support and the correlative duty of the owner of mineral rights to furnish such support is of great and far-reaching importance to the entire iron ore area of this state, where underground mining has occurred or will occur in the future. That law should be developed upon established facts, not by advisory opinions based on assumed facts, as far as that can be done. We do not choose to render an advisory opinion on a branch of law of such far-reaching importance. We shall, therefore, limit our decision to the one question now before us. It is apparent from the court's memorandum that he was of the opinion that the demurrer was sustained as to all but the one question for he said in his memorandum:

"The demurrer of the plaintiff is sustained as to all matters excepting the allegation that the plaintiff had knowledge of the instability of the ground at the time of the construction of the building thereon."

We so read the record.

Plaintiff in its brief concedes:

"* * * that if a surface owner knows his land is unstable, and will not support reasonable burdens, he is not privileged to ignore this knowledge and then call upon the mineral owners to make him whole."

And also:

"* * * that if a surface owner places unreasonable burdens on his land which causes subsidence of the property, he cannot claim damages from the owner of subjacent minerals, for the subjacent owner has committed no actionable wrong."

Apparently plaintiff would not have us decide the rights of surface owners who know subsidence has occurred as a result of underground mining or is likely to occur as a result of such mining but would have us decide the rights of surface owners who know that underground mining has occurred but have no knowledge of the fact that subsidence has occurred or is likely to occur as a result of such mining. The duty to inspect before building in the case of the surface owner who has knowledge that subsidence has already occurred or has knowledge that subsidence is apt to occur must be distinguished from the duty of one who has no such knowledge. The distinction is pointed out in Audo v. Western Coal & Min. Co. 99 Kan. 454, 459, 162 P. 344, 346, where the court said:

"* * * When the defendant sold this land to the plaintiff the surface was standing in its natural position, supported in some way by what was below. The plaintiff knew that some of the coal had been mined from the land, but he had no personal knowledge of the manner in which the mine had been worked. There was no evidence to show that he knew that the mine had been left in such a condition that there would be a subsidence of the surface. There was nothing to indicate that support for the strata above the coal had been withdrawn. The plaintiff had the right to assume that such support had been left. Under these circumstances the plaintiff's knowledge of the fact that the coal had been taken from a portion of this land did not constitute a waiver of the right to subjacent support conveyed by the deed."

In Peters v. Bellingham Coal Mines, 173 Wash. 123, 132, 21 P. (2d) 1024, 1027, the court said:

"Appellant further contends that respondents * * * having acquired title subsequent to the completion of the mining under

their lands, acquired no right of action by reason of such mining.

"The record shows that the subsidence had not occurred when they acquired title to their properties. The damage occurred later, on April 30, 1930. Evidently, it could not have been anticipated, and their rights of action are as complete as they would have been had they acquired title before the termination of the mining operations."

See, also, 58 C. J. S., Mines and Minerals, § 278, p. 784.

Plaintiff here seeks to recover damages to its building as well as to its land. While paragraph XII may not be as definite as it might have been, if it can be shown that plaintiff had knowledge or had such information as to cause it to believe that subsidence had occurred or would occur in the future and still erected its building on such land, it would hardly seem that it could be permitted to recover for damages to such building regardless of what the right to subjacent support might be, which we do not decide. If the answer pleads a good defense to any part of plaintiff's cause of action, it is good as against a demurrer. The court correctly overruled the demurrer as to paragraph XII.

It should be said in passing that this action was commenced prior to the effective date of our new rules of civil procedure. The demurrer was interposed subsequent to the effective date thereof. Demurrers are abolished by Rule 7.01 of Rules of Civil Procedure.[2]

Rule 86.01 provides that the rules govern all proceedings and actions pending on the effective date thereof—

"except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible, or would work injustice, * * *."

We have been shown no reason why the exception should apply. In view of the fact that the issues before us are very limited, we have chosen to dispose of the case on its merits.

Affirmed.

[2]See, 1 Youngquist & Blacik, Minnesota Rules Practice, p. 180.