95 P.3d 1236 (2004)
SADDLE MOUNTAIN MINERALS, L.L.C., a Washington Limited Liability Company, Gary Maughan and Carol Maughan, husband and wife, Respondents,
v.
Arun JOSHI and Vandana Joshi, husband and wife, and A & V Enterprises, Inc., a Washington corporation, Petitioners.
No. 73899-8.
Supreme Court of Washington, En Banc.
Argued February 26, 2004.
Decided August 12, 2004.
*1237 John P. Raekes, Diehl Randall Rettig, Kennewick, for Petitioners.
Gregory S. McElroy, McElroy Law Firm PLLC, Seattle, Lisa A. Brautigam, Fennemore Craig, Phoenix, AZ, for Respondents.
Timothy Dunning Ford, Olympia, for Amicus Curiae (Building Industry Assoc. of Washington).
MADSEN, J.
Arun and Vandana Joshi (the Joshis) challenge the Court of Appeals decision reversing the trial court's summary judgment in their favor in a case involving trespass to land and conversion. The owners of the mineral estate in the land in question, Saddle Mountain Minerals, L.L.C. (Saddle Mountain), brought an action for damages, alleging that the Joshis exported sand and gravel from the property without permission from or payment to Saddle Mountain. The trial court ruled as a matter of law that Saddle Mountain is barred from recovering damages from the Joshis because mining is not permitted under the relevant zoning ordinance. The trial court also held that the Joshis' right to subjacent support bars recovery. We hold that summary judgment was improperly granted and affirm the Court of Appeals.

FACTS
This case involves 18.16 acres of property located in the city of Richland. The property was previously owned by Glacier Park Company (GPC). In 1990, GPC sold the property, less mineral rights, to the Youngs. According to the warranty deed for this sale, minerals including sand and gravel were excluded from the sale and the mineral owner had a right to enter upon the surface of the property for the purpose of drilling, extracting, operating, and working any extraction and processing facilities by any procedures whatsoever.[1]
*1238 In 1993, Richland rezoned the property to R-2, a high density residential use district. Ch. 23.24 Richland Municipal Code (RMC). Under the municipal code, mining is neither listed as a permitted use nor as special use in an R-2 district. RMC 23.24.020, .030, .035.
In October 1995, GPC conveyed its mineral rights to Gary and Carol Maughan by a quitclaim deed. In May 2000, the Maughans quitclaimed these rights to Saddle Mountain. The quitclaim deed listed mineral and other rights conveyed in language identical to the warranty deed for the sale between GPC and the Youngs.
In 1999, the Joshis purchased the property, without mineral rights as specified above, from the Youngs. At the time of his purchase Arun Joshi knew that he did not own the mineral rights on the purchased property. As the Joshis intended to construct a residential home development called Gage Galaxy on the property, the purchase was contingent upon Richland's approval of a preliminary plat for Gage Galaxy. Richland approved the preliminary plat on November 3, 1999.
On October 30, 2000, Saddle Mountain sent a letter to Richland, informing the city that he owned the mineral rights to the Gage Galaxy site being developed by the Joshis. Richland informed the Joshis of Saddle Mountain's claim and approved the final plat the next day.
Because the Gage Galaxy site was undeveloped, some areas had to be graded or cut, while other areas had to be built up or filled before developing the site. The Joshis moved topsoil from a cut area to an area that needed filling. The Joshis also built a road access to Gage Galaxy from Gage Boulevard. The road crosses an abandoned railroad right-of-way as well as property not owned by the Joshis. Saddle Mountain claims that the Joshis exported sand and gravel, possibly as much as 5,000 cubic yards, from the Gage Galaxy site in order to fill the railroad right-of-way. The Joshis deny Saddle Mountain's claim.
On April 11, 2001, Saddle Mountain filed suit against the Joshis in Benton County Superior Court. Saddle Mountain alleged that the Joshis committed statutory trespass under RCW 4.24.630, trespass to mineral rights in land under common law and common law conversion, claiming that the Joshis exported minerals, including sand and gravel, from the Gage Galaxy site without paying royalties to Saddle Mountain. The Joshis denied Saddle Mountain's allegations and moved for summary judgment. In support of the motion, the Joshis asserted that Saddle Mountain suffered no damage because Richland's zoning ordinance destroyed Saddle Mountain's mineral rights. Additionally, the Joshis argued that Saddle Mountain was not damaged because the Joshis are entitled to subjacent support, which would preclude mining sand and gravel. Saddle Mountain moved for a partial summary judgment, asking the trial court to find as a matter of law that the Joshis are liable to Saddle Mountain for trespass to and removal of minerals. Saddle Mountain also filed a motion for continuance on the Joshis' motion for summary judgment in order to complete discovery on the issue of whether the Joshis exported sand and gravel from the Gage Galaxy site.
The trial court granted the Joshis' motion for summary judgment, holding that Saddle Mountain had not been damaged by the Joshis' actions, even assuming that they had removed sand and gravel, since the mineral rights were rendered worthless by the zoning ordinance prior to acquisition by Saddle Mountain. The trial court also held that the Joshis' absolute right to subjacent support precluded sand and gravel mining as a matter of law. Finally, the trial court held that a residential developer, such as the Joshis, had a lawful right to utilize the surface soil in the *1239 development of the Gage Galaxy site. On the same day, the trial court issued an order denying Saddle Mountain's motion for continuance.
Saddle Mountain appealed and the Court of Appeals reversed. Saddle Mountain Minerals, L.L.C. v. Joshi, 116 Wash.App. 198, 65 P.3d 366 (2003). The court pointed out that it was not clear whether the mineral rights were actually destroyed through the rezone or whether they were merely restricted. It then held that a reasonable juror could conclude either that any mining of sand and gravel from the site was prohibited or that only certain methods of acquiring sand and gravel from the site were prohibited by RMC. Id. at 205, 65 P.3d 366 (emphasis in original). Thus, the Court of Appeals concluded that the summary judgment in favor of the Joshis was improper.
The Joshis filed a petition for review in this court. Saddle Mountain answered to the petition, raising additional issues. We limited review to the question of whether Saddle Mountain is barred from recovering damages because Saddle Mountain's mineral rights were rendered worthless by Richland's zoning code prohibiting mining and the Joshis' right to subjacent support.[2]

ANALYSIS
We review the summary judgment granted by the trial court de novo. The appellate court engages in the same inquiry as the trial court. Citizens for Responsible Wildlife Management v. State, 149 Wash.2d 622, 630, 71 P.3d 644 (2003); Herron v. Tribune Publishing Co., 108 Wash.2d 162, 169, 736 P.2d 249 (1987). The appellate court treats all facts and inferences in the light most favorable to the nonmoving party. Green v. A.P.C., 136 Wash.2d 87, 94, 960 P.2d 912 (1998). A motion for summary judgment is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).
Saddle Mountain is claiming damages for statutory trespass under RCW 4.24.630, trespass to mineral rights in land under common law, and conversion of minerals. Under RCW 4.24.630, an injured party is entitled to recovery of treble the amount of the damages. In a case involving trespass to mineral rights in land under common law, an injured party is entitled to recovery of damages typically measured either as value of minerals when appropriated, without regard to expense of mining them (in case of willful or intentional trespassing), or the value of minerals in place (in case of innocent trespassing). Sandlin v. Webb, 240 S.W.2d 69, 69 (Ky.1951); Daly v. Smith, 220 Cal.App.2d 592, 598, 33 Cal.Rptr. 920 (1963). In a conversion case, an injured party is normally entitled to recovery of damages measured by the fair market value of the property at the time and place of conversion. Merchant v. Peterson, 38 Wash.App. 855, 858, 690 P.2d 1192 (1984). The trier of fact determines the question of value. See, e.g., Fehl-Haber v. Nordhagen, 59 Wash.2d 7, 8, 365 P.2d 607 (1961). Considering facts and inferences in light most favorable to Saddle Mountain, the Joshis exported sand and gravel from the Gage Galaxy site to the railroad right-of-way, which is not a part of the Joshis' property. Thus, the trial court's summary judgment is proper only if Saddle Mountain is barred from recovering damages from the Joshis as a matter of law.
Under Richland's zoning code, RMC 23.24.080, all uses not expressly permitted in an R-2 district, including the Gage Galaxy site, are prohibited. As the Joshis correctly point out, mining is neither listed as a permitted use nor as special use in a R-2 district. RMC 23.24.020, .030, .035. Thus, the ordinance appears to prohibit mining on the Gage Galaxy site.
*1240 Assuming that mining is prohibited on the Gage Galaxy site, the Joshis assert that the prohibition destroyed Saddle Mountain's mineral rights. Essentially, the Joshis argue that they could not commit trespass to or convert Saddle Mountain's gravel and sand because Richland's zoning ordinance destroyed Saddle Mountain's mineral rights and that Saddle Mountain's predecessor should have sued Richland for an unconstitutional taking.
In support of their position, the Joshis rely on a deskbook on real property and out-of-state cases. WASHINGTON STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK (3d ed.1997); Beverly Oil Co. v. City of Los Angeles, 242 P.2d 682 (Cal.App.Ct.1952), vacated on other grounds by Beverly Oil Co. v. City of Los Angeles, 40 Cal.2d 552, 254 P.2d 865 (1953); Board of Supervisors of Shenango Township v. McClimans, 142 Pa.Cmwlth. 470, 597 A.2d 738 (1991).
The Washington Real Property Deskbook states that a zoning ordinance may actually destroy mineral rights in some cases, particularly in the case of sand and gravel mining. WASHINGTON REAL PROPERTY DESKBOOK § 17.7(5), at 17-27. The book points out that to the extent that land use regulation destroys the value of land, a taking question arises, relying on Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) and Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). WASHINGTON REAL PROPERTY DESKBOOK § 17.7(5).
In Beverly Oil, the owner of the land at issue had several wells producing oil. 242 P.2d 682. Oil production had been expressly permitted as a nonconforming use under the city of Los Angeles' zoning ordinance since 1925. In 1946, Los Angeles enacted a new ordinance, which expressly provided that no well for the production of oil, gas, or other hydrocarbon substances, which is a nonconforming use, shall be redrilled or deepened. In seeking to drill new wells, the owner sued Los Angeles and argued that the city could not destroy his vested right to reach any and all oil underlying the property. The court rejected the owner's argument, finding that "the enactment of a comprehensive zoning ordinance necessarily destroys many vested rights." Id. at 683.
In Pennsylvania Coal Co., the coal company conveyed land to Mahon by deed. 260 U.S. at 412, 43 S.Ct. 158. The deed explicitly reserved the right to remove all the coal under the land. However, a state statute prohibited the mining of anthracite coal in such a way as to cause the subsidence of a house. Mahon sued the coal company to prevent the coal company from mining in such a way as to remove support and to cause a subsidence of the surface and of his house. He argued that the coal company's rights were " taken" by the statute. The Supreme Court held that the statute constituted a taking of the coal company's rights without compensation. In so holding, the Court pointed out that a taking occurs where diminution of property value reaches a certain magnitude. Then, the Court found a taking by the state because the statute practically destroyed the company's right to mine by making it impracticable to mine coal for profit.
In Keystone Bituminous Coal Ass'n, coal mine operators sued officials of the Pennsylvania Department of Environmental Resources to prevent enforcement of legislation that prohibited mining that would cause subsidence damage to certain categories of buildings and the like. 480 U.S. at 478, 107 S.Ct. 1232. The operator owned substantial coal reserves beneath the surface of property affected by the legislation. The operators argued that the legislation constituted a taking of their property without compensation, violating the fifth and fourteenth amendments to the United States Constitution. The Supreme Court reiterated that a taking occurs where a land use regulation denies an owner economically viable use of his or her land. Id. at 485, 107 S.Ct. 1232. The Court concluded, however, that here the operators failed to prove that they were denied the economically viable use of their property because the legislation did not destroy their ability to mine coal profitably.
In Board of Supervisors of Shenango Township, the trial court held that a township zoning ordinance conclusively prevented landowners and a mining company that had a *1241 leased right to mine coal lying beneath their lands from gaining access to their subsurface coal estate. 142 Pa. Cmwlth. at 476-77, 597 A.2d 738. On review, the court affirmed the lower court's ruling that there was a taking without just compensation.
Here, unlike the owners or lessees of mineral rights in Pennsylvania Coal Co., Keystone Bituminous Coal Ass'n, and Board of Supervisors of Shenango Township, Saddle Mountain retains much more than a limited type of minerals beneath the surface. The warranty deed provides that Saddle Mountain owns any kind of minerals in and under the Gage Galaxy site including sand and gravel. If Saddle Mountain finds any kind of minerals in the Gage Galaxy site even without digging or mining, such minerals belong to Saddle Mountain.
More fundamentally, applying takings law to this case is inappropriate. Among the factors that are significant in a taking claim are the question of the economic impact of the challenged action and "`the extent to which [the action] interferes with reasonable investment-backed expectations.'" Estate of Friedman v. Pierce County, 112 Wash.2d 68, 79, 768 P.2d 462 (1989) (quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 191, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). Where a land owner has not sought a variance or waiver from land use restriction, a taking claim is not ripe. Before a property owner can raise a taking claim, the government entity charged with implementing the regulation must reach a final decision regarding the application of the regulations to the property at issue. Then, the court must ascertain the remaining value of the regulated property to determine the amount of economic impact caused by the regulation. The question of remaining value is a question of fact determined by the jury. Cf. Thomas G. Douglass, Jr., Have They Gone "Too Far"? An Evaluation and Comparison of 1995 State Takings Legislation, 30 GA. L.REV. 1061, 1096 (1996).
Here, Saddle Mountain has never applied for a variance or waiver from the mining prohibition under the ordinance. There is no final governmental decision regarding the application of the regulations to the minerals on and in the Gage Galaxy land. There is no determination by the trier of fact as to the remaining value of Saddle Mountain's mineral rights. There is simply no support for a conclusion that Richland's zoning ordinance rendered Saddle Mountain's mineral rights worthless.
Moreover, while Pennsylvania Coal Co. and Beverly Oil may support a conclusion that ordinances may destroy a right to mine, these cases do not address the issue of whether the minerals themselves are rendered valueless. In fact, case law demonstrates that minerals have some value in themselves apart from a right to mine.
In Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92 (1950), Caldwell County executed a mineral lease to Morse, who mined minerals. Id. at 87, 230 S.W.2d 92. Thereafter, Hughett sued the county over the title to the land. After judgment in favor of the county, Morse started mining. On review, the judgment was reversed in favor of Hughett. Although the court held that the county was an innocent trespasser, the court stated that the owner was entitled to damages for minerals extracted even where the owner could not extract the minerals himself in any practical or feasible way or where he is merely holding his property for development in the unforeseeable future. Id. at 88, 92, 230 S.W.2d 92.
In Young v. Ethyl Corp., Young sued a mineral company for trespass after the company extracted minerals from his land. 581 F.2d 715, 716 (8th Cir.1978). The company argued that Young could not have profitably mined the minerals beneath his land because he lacked technical and financial resources to do so. Nevertheless, the court held that Young was at least entitled to damages measured by the royalty value of the minerals extracted.
Here, the Joshis were permitted to develop the Gage Galaxy site and excavate sand and gravel on the site for grading purposes after Richland approved the final plat. Applying the logic of Hughett and Young, Saddle Mountain is entitled to damages for the sand and gravel exported from the Gage Galaxy *1242 site by the Joshis even if Saddle Mountain cannot extract sand and gravel under the ordinance because sand and gravel are not worthless. Accordingly, Richland's zoning ordinance does not bar Saddle Mountain from recovering damages from the Joshis.
The trial court also held that Saddle Mountain is barred from recovering damages, even if Richland's zoning ordinance does not prohibit mining on the Gage Galaxy site because the Joshis are entitled to subjacent support. The Joshis argue that they have an absolute right to subjacent support, which precludes sand and gravel mining, thus rendering Saddle Mountain's mineral estate worthless.
Indeed, where a surface owner and an owner of mineral rights are different, the surface owner has a right to subjacent support as a proprietary right unless the surface owner has parted with or waived his or her right to subjacent support by deed. 53A AM.JUR. 2d Mines and Minerals § 349 (1996). This Court has recognized the theory of subjacent support in Peters v. Bellingham Coal Mines, 173 Wash. 123, 129, 21 P.2d 1024 (1933). In that case, a land owner entered into a coal mining lease with John Eden and Michael Earles. The lease presupposed that they would perform underground mining by employing such language as "`the removal of the underlying coal'" or "`lessee shall conduct all mining and other operation hereunder in such a manner as not to interfere with the surface rights.'" Id. at 126, 21 P.2d 1024. They assigned their rights under the lease to a mining company, which mined coal beneath the land. The surface estate was later purchased by Peters. As a result of mining, the surface lost substantial subjacent support. A couple of years after the company stopped mining, the surface subsided. Peters sued the company. In its judgment in favor of Peters, this court held that the surface owner is entitled to subjacent support unless the surface owner waives such support by some clearly expressed contractual term.
Here, given the warranty deed for the sale between GPC and the Youngs and the quitclaim deed for the sale between the Maughans and Saddle Mountain, Saddle Mountain is entitled to much more than what Eden and Earles were entitled to in Peters. The deeds show that Saddle Mountain is entitled to extract not just a certain type of minerals but any kind of minerals, including sand and gravel. They also show that Saddle Mountain can take sand and gravel from the surface by any procedure whatsoever. For example, Saddle Mountain may be able to extract sand and gravel in a manner that does not raise the issue of subjacent support.[3] Thus, unlike in Peters, the theory of subjacent support does not resolve this case.
Moreover, regardless of whether the theory of subjacent support precludes Saddle Mountain from mining sand and gravel, sand and gravel have value, apart from the value of the right to mine, as discussed above. As an owner of sand and gravel in the Gage Galaxy site, Saddle Mountain is not barred from recovering damages from the Joshis if they exported sand and gravel from the Gage Galaxy site.
Finally, while the Joshis asserted in their motion for summary judgment that they had a lawful right to develop the surface land because they were entitled to absolute subjacent support, specifically linking their right to develop the surface land to their right to subjacent support, the trial court granted summary judgment on a broader ground, *1243 holding generally that a residential developer has a lawful right to utilize the surface soil in the development of the property.
A surface owner can burden a mineral owner's right. In Pyramid Coal Corp. v. Pratt, the owner of land  who did not own the coal lying beneath the land  drilled a well to supply water for his house. 229 Ind. 648, 650, 99 N.E.2d 427 (1951). The well passed through a seam of coal. The mining company, owner of the coal, removed a part of the well passing through the seam of coal while excavating coal. As a result, the surface owner was deprived of his water supply and the water was allegedly contaminated. The surface owner sued the mining company for damages caused by loss of water supply and possible contamination of the water. Id. The court ruled in favor of the surface owner and held that he was entitled to drill a well to obtain water because the severance of surface ownership and mineral ownership created an easement in favor of the surface owner which burdened the mining company's right to coal. Id. at 651-54, 99 N.E.2d 427.
However, even if a surface owner can burden a mineral owner's right, it does not mean that the surface owner can export minerals without any compensation to the mineral owner. In Mullins v. Clinchfield Coal Corp., the surface owner displaced coal owned by a mining company while he was grading and excavating in order to improve his land. 227 F.2d 881, 882-83 (4th Cir.1955). The mining company sued the surface owner. The surface owner claimed that the material displaced was "just soil," outcrop coal, unmineable and of no value, and not a part of the coal company's mineral estate. Id. at 882. The court held that displacement of coal in the reasonable exercise of surface or residual rights did not constitute a willful trespass. Nevertheless, the court held that the mineral owner was entitled to compensation based on the value in situ of the coal displaced.
Here, as in Pyramid Coal Corp., the Joshis were entitled to utilize the surface soil in developing the Gage Galaxy site. However, under Mullins, the Joshis must compensate Saddle Mountain if they export sand and gravel from the Gage Galaxy site.

CONCLUSION
We hold that neither Richland's zoning ordinance nor the theory of subjacent support bars Saddle Mountain from recovering damages from the Joshis. We affirm the Court of Appeals.
ALEXANDER, C.J., and JOHNSON, IRELAND, BRIDGE, OWENS, FAIRHURST, JJ., concur.
SANDERS, J. (concurring).
I concur that the opinion of the Court of Appeals should be affirmed and this matter should be remanded for trial.
However, I disagree with the majority that a takings analysis is at all appropriate, as this is a case between private parties involving trespass and conversion, not eminent domain or inverse condemnation. In this regard the majority states, "More fundamentally, applying takings law to this case is inappropriate." Majority at 1241. If so, why discuss it?
Whether Saddle Mountain might have a viable claim against the government is not before us and is not relevant to the outcome here. Moreover, I question the majority's dicta analysis in several respects. Use regulations may yield a taking; however, a physical appropriation or trespass or illegitimate permit condition or exaction may also constitute a taking.[1] And a mere "damaging" under article I, section 16 of our state constitution is also actionable even where a "taking" has not occurred. See, e.g., Brown v. City of Seattle, 5 Wash. 35, 40-41, 31 P. 313 (1892).
Therefore, I think it better to leave development of our takings jurisprudence to cases which require resolution of a takings issue, which this does not.
*1244 CHAMBERS, J. (dissenting).
I respectfully dissent and would affirm the trial court's dismissal of this case.
Plaintiffs bear the burden of proof on all elements of the cause of action they plead. Cf. Lewis v. City of Seattle, 28 Wash. 639, 69 P. 393 (1902). Failure to prove a single element is fatal to the claim. Boyce v. West, 71 Wash.App. 657, 665, 862 P.2d 592 (1993). In this case, Saddle Mountain Minerals, the holders of a mineral estate, sued Arun and Vandama Joshi, the owners of the surface estate, on a variety of theories. The trial judge granted summary judgment for the Joshis largely on the grounds that "no reasonable juror would find that the Plaintiff has been damaged by the actions of the Defendants since the mineral rights were worthless at the time acquired by Plaintiff due to the zoning prohibition on mining activity." Clerk's Papers at 19.
I agree with the majority that the zoning ordinance prohibiting mining did not render Saddle Mountain's mineral rights worthless. Majority at 1241-1242. However, this court can  and usually should  affirm summary judgment on any grounds supported by the record and the pleadings. See Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 344, 883 P.2d 1383 (1994). Saddle Mountain bore the burden of proof on its damages at summary judgment. It is possible that some time in the future, perhaps centuries from now, the homes now built will be gone, zoning will change, and Saddle Mountain will be permitted to mine. It is possible that some time in the future, perhaps centuries from now, emerging technologies will allow extraction of minerals with no harm to the surface estate, and Saddle Mountain will be permitted to mine. Many things are possible. The question remains, did Saddle Mountain meet its burden to quantify its damages with reasonable probability at summary judgment? I concur with the learned trial judge that it did not.
Saddle Mountain had the duty of presenting sufficient evidence of damage to survive summary judgment. RCW 4.24.630; Merchant v. Peterson, 38 Wash.App. 855, 858, 690 P.2d 1192 (1984). While we do not demand absolute certainty, we do not grant damages that are too remote or speculative. Bromley v. Heffernan Engine Works, 108 Wash. 31, 32, 182 P. 929 (1919). Saddle Mountain simply did not present evidence from which a reasonable juror could have believed it could exercise these mineral rights, except in a remote or speculative time frame.
Importantly, this is not a case where Saddle Mountain had sought a variance from the zoning ordinance. The result may have been different then. I also recognize that we took this case to settle a slightly different question: whether the purchaser of mineral rights can ever recover under these types of facts. However, my review of the record has persuaded me that the question is not well presented in this case, and we should resolve it on the same grounds the trial judge resolved it. See Alverado v. Wash. Pub. Power Supply Sys., 111 Wash.2d 424, 429, 759 P.2d 427 (1988) (court has inherent authority to consider issues necessary to reach a just result); Hall v. Am. Nat'l Plastics, Inc., 73 Wash.2d 203, 205, 437 P.2d 693 (1968).
Since Saddle Mountain has not met its burden, the trial court properly dismissed the case. Accordingly, I respectfully dissent.
NOTES
[1] The warranty deed lists rights left to GPC as follows:

EXCEPTING AND RESERVING, however, to the Grantor, for itself, its successors and assigns, forever, all right, title and interest, legal and equitable, whatsoever, however derived, reserved or held, in and to all geothermal heat and all ores and minerals of any nature whatsoever, including, but not limited to, oil, gas, other hydrocarbons, carbon dioxide, coal, iron, gas occurring in coal formation, industrial minerals, metallic minerals, aggregates, sand, gravel, clay, uranium, rock, including, but not limited to, rock of a unique character (hereinafter "minerals"), in and under or which may be produced from the above-described real estate (hereinafter "Premises"), together with all the right to enter upon the Premises for the purposes of prospecting and exploring for minerals by geophysical, geochemical or other means, and for the purposes of drilling, extracting, operating and working any extraction and processing facilities by any procedures whatsoever, and taking out, removing, carrying away, the tenements, hereditaments and appurtenances. Provided, however, that the Grantees, their successors and assigns, shall be paid just and reasonable compensation for any actual physical injury or damage to the surface of said Premises including improvements, growing crops and timber thereon caused by the exercise of any rights herein reserved. The exercise of such rights by the Grantor or its successors and assigns shall not be postponed or delayed pending reasonable efforts to agree upon, or have determined, such just and reasonable compensation.
Clerk's Papers at 191.
[2] In their petition, the Joshis also raised the issue of whether removal of sand and gravel is subject to treble damages under RCW 4.24.630(1). This issue was not addressed by the trial court and thus not a part of our review of the trial court's summary judgment order. However, it should be noted that in granting summary judgment in favor of the Joshis, the trial court dismissed not only Saddle Mountain's claim based on RCW 4.24.630(1) but also its claims based on trespass to mineral rights in land and conversion under common law.
[3] The Joshis argue that mining damages their subjacent support, relying on Moore v. Memphis Stone & Gravel Co., 47 Tenn.App. 461, 339 S.W.2d 29 (1959). In that case, a landowner executed a lease authorizing a mining company to mine sand and gravel from his land, which was zoned as an agricultural district. His neighbors sued him, claiming that mining violated a joint regulation by Shelby County and the city of Memphis which prohibited mining in an agricultural district. In the judgment in favor of the neighbors, the court explained an open pit method of mining used by the mining company: the removal of the sand and gravel is accomplished by digging and pushing aside the overburden of dirt ranging from 15 to 20 feet deep and then excavating and removing the sand and gravel deposits by means of a crane and shovel. Based on this illustration of the mining method, the Joshis argue that mining by Saddle Mountain would destroy their subjacent support. However, the record does not support that such a method is the only way for a mineral owner to obtain sand and gravel.
[1] A taking may occur if the regulation "`does not substantially advance legitimate state interests, ... or denies an owner economically viable use of his land.'" Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 485, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (quoting Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)).