NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 27 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SADDLE MOUNTAIN MINERALS, LLC,

Plaintiff-Appellant,

v.

CITY OF RICHLAND, a municipal
corporation of the State of Washington,

Defendant-Appellee.

No.    23-35622

D.C. No. 4:22-cv-05055-TOR

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted November 19, 2024
Seattle, Washington

Before: McKEOWN, H.A. THOMAS, and DESAI, Circuit Judges.

Saddle Mountain Minerals, L.L.C. ("Saddle Mountain") appeals the district

court's grant of summary judgment for the City of Richland ("the City") and its

exclusion of the expert testimony of Edward Greeno. We have jurisdiction under 28

U.S.C. § 1291. We review the district court's summary judgment ruling de novo,

*Lowry v. City of San Diego*, 858 F.3d 1248, 1254 (9th Cir. 2017) (en banc), and its

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

decision to exclude expert testimony for abuse of discretion, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010). We affirm.

Saddle Mountain owns the mineral rights to 808 acres of land within the City and alleges that the City's zoning ordinances, which prohibit mining, and two residential building permits, which authorize construction atop Saddle Mountain's mineral rights, amount to unconstitutional takings. Saddle Mountain further alleges that the City violated its procedural due process rights by failing to notify Saddle Mountain when the City issued building permits to surface owners.

1. Saddle Mountain failed to present evidence that the City's zoning ordinances or building permits amount to a regulatory taking.[1] We recognize three types of regulatory takings: a *Loretto* taking, a *Lucas* taking, and a *Penn Central* taking. *See Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 538 (2005).

A *Loretto* taking occurs when the "government requires an owner to suffer a permanent physical invasion of her property." *Id.* (citing *Loretto v. Teleprompter*

---

[1] The City argues that Saddle Mountain's takings claims are untimely, but we disagree. A takings claim accrues when it is ripe. *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1051–52 (9th Cir. 2004). And a claim is ripe when the plaintiff applies for and is denied a variance. *Lai v. City & Cnty. of Honolulu*, 841 F.2d 301, 303 (9th Cir. 1988). Saddle Mountain applied for and was denied a variance on March 24, 2022, and filed this lawsuit shortly thereafter, well within Washington's three-year statute of limitations for § 1983 claims. *See Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981).

*Manhattan CATV Corp.*, 458 U.S. 419 (1982)). Only "if the government authorizes a compelled physical invasion of property" is a taking effectuated and compensation required. *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992).

Saddle Mountain argues that the City "authorized others to build on top of [its] rights" by issuing Type I building permits. But to constitute a *Loretto* taking, the City's action must *require* Saddle Mountain to "submit to the physical occupation of [its] land." *Yee*, 503 U.S. at 530. The City's building permits may allow the surface owner to build, but the permits do not require that Saddle Mountain "submit to the physical occupation of [its mineral rights]." *See id*. Thus, the City's permits do not authorize a "compelled physical invasion of property." *Id*. at 527.

Nor can Saddle Mountain establish a *Lucas* taking. A *Lucas* taking occurs when regulations completely deprive an owner of "*all* economically beneficial uses" of its property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). Since 1988, Saddle Mountain has made over $675,000 by selling its mineral rights to surface owners. Given that Saddle Mountain originally purchased the mineral rights for $1 per acre and now sells them for $2,500–$5,000 per acre, the value of its mineral rights has increased significantly despite the City's zoning ordinances. "[V]alue is determinative," and "any residual value after the regulation's application" compels not a *Lucas* analysis, but a *Penn Central* analysis. *Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n*, 950 F.3d 610, 627–28 (9th Cir. 2020). The

significant residual value of Saddle Mountain's mineral rights precludes a *Lucas* taking.

Saddle Mountain's *Penn Central* takings claim also fails. To assess whether a *Penn Central* taking occurred, we examine three factors: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). "[E]conomic impact is determined by comparing the total value of the affected property before and after the government action." *Colony Cove Props. v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018). Determining the reasonable investment-backed expectations requires an "objective analysis," the focus of which is the "interference with reasonable expectations." *Bridge Aina Le'a,* 950 F.3d at 633; *see also Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010).

Saddle Mountain argues that its mineral rights are worth $2.8 million. But this figure estimates the value of the rights to surface owners for the purpose of clearing title, not the value of the minerals themselves. Because Saddle Mountain's claim rests on the theory that it has been deprived of the value of its physical minerals, the $2.8 million estimate is irrelevant to the economic impact of the City's zoning ordinances.

Even if this estimate were relevant to Saddle Mountain's claim, Saddle Mountain does not offer evidence of the change in value, if any, of the mineral rights after the zoning ordinances went into effect. Nor does it offer evidence of the change in value of the mineral rights, if any, after the variance was denied. Absent pre- and post-deprivation values, it is impossible to determine whether the zoning ordinances had any impact at all on the value of Saddle Mountain's mineral rights.[2] *See Colony Cove*, 888 F.3d at 451.

Further, the general impression that the mineral rights would be "a good real estate investment" does not amount to a "distinct investment-backed expectation" that Saddle Mountain would be able to mine, excavate, or otherwise profit from the minerals. *Bridge Aina Le'a*, 950 F.3d at 633–34 ("Unilateral expectations or abstract needs cannot form the basis of a claim that the government has interfered with property rights.") (cleaned up). Here, this is particularly true because most of the zoning ordinances at issue were in effect at the time Saddle Mountain purchased the mineral rights. *See id.* at 634 ("What is relevant and important in judging reasonable expectations is the regulatory environment at the time of the acquisition of the property." (quoting *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331,

---

[2] At oral argument, Saddle Mountain maintained that the "pre-deprivation" value was $2.8 million, and that the "post-deprivation" value was zero. But there is no evidence in the record that the minerals' value decreased to zero either when the zoning ordinances went into effect or upon denial of the variance.

1345 (Fed. Cir. 2018)) (cleaned up)). Because Saddle Mountain has not offered evidence of "economic impact" or "distinct investment-backed expectations," it cannot establish a *Penn Central* taking.

2.      The district court did not abuse its discretion in excluding as irrelevant the expert testimony of appraiser Edward Greeno. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Greeno assessed the market value of the mineral rights to surface owners motivated to clear title, not the value of the minerals themselves. Because Saddle Mountain advanced the theory that the City's zoning ordinances deprived it of the right to mine and excavate its raw minerals, Greeno's testimony regarding the value of the rights for consolidating a severed estate is not relevant to Saddle Mountain's takings claims.

3.      Saddle Mountain also failed to establish that the City violated its procedural due process rights. "To obtain relief on a procedural due process claim, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

6

There is no evidence that the City's building permits "deprive" Saddle Mountain of any interest, let alone a protected property interest. To be sure, Saddle Mountain has a property interest in its minerals, which include sand, gravel, and clay. But under Washington law, surface development by the surface owner does not "deprive" the mineral rightsholder of any compensable property interest so long as the minerals remain on the property. *See Saddle Mountain Minerals, L.L.C. v. Joshi*, 95 P.3d 1236 (Wash. 2004); *Saddle Mountain Minerals, L.L.C. v. Santiago Homes, Inc.*, 189 P.3d 821 (Wash. App. 2008). To the extent that the City's building permits allow the surface owner to burden Saddle Mountain's mineral rights, it is a burden inherent in the rights themselves. *See id.*

In any event, even assuming the City's building permits deprive Saddle Mountain of its mineral rights, "'mere approval of or acquiescence in'" construction by issuing a building permit "is 'not sufficient to justify holding [the City] responsible for that construction under the terms of the Fourteenth Amendment.'" *Shanks*, 540 F.3d at 1088 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (cleaned up). The City's building permits merely allow surface owners to exercise rights to which they are already entitled under Washington law. The decision to build, and to impact Saddle Mountain's mineral interests in the process, is made by the surface owner, not the City. *See Blum*, 457 U.S. at 1004 ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power

7

or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."). Saddle Mountain's due process claim fails.

**AFFIRMED.**